McCRADY v. JONES.

McCRADY v. DAVIE.

1. APPEAL—INTERMEDIATE DECREE.—Notice of appeal from an intermediate order of the Circuit Court having been duly given, and said appeal stayed by a consent order until the "case reaches the Supreme Court on its merits," the appeal from such order may be heard under a general notice of appeal and exceptions taken in proper time after the final decree in the cause.

2. IBID.—IBID.—A decree which does not finally determine all the issues involved is intermediate, and may be reviewed under appeal from the final judgment, notwithstanding notice of intention to appeal from such decree was given within ten days after notice of its filing, and exceptions served within thirty days thereafter, but no further steps in the appeal then taken.

3. IBID.—IBID.—CONSOLIDATED CAUSES.—Two causes were consolidated and heard as one on Circuit, and the decree dismissed one of these causes, but was not final as to all the issues involved in the other. *Held*, that an appeal might be prosecuted from such order of dismissal, after final judgment, on exceptions and notice of intention to appeal served in due time after the filing of the intermediate decree.

4. IBID.—IBID.—EXCEPTIONS.—On appeal from a final judgment, this court will consider the exceptions then taken to intermediate decrees in the cause as well as those which were taken at the time such decrees were rendered.

5. EQUITIES OF DEFENDANTS—ADDITIONAL PARTIES.—A plaintiff's rights in her action for partition were undisputed, but her allegations in the complaint as to the shares of the several defendants were disputed by some of them, who claimed interests that could not properly be adjusted without adding another party as defendant. At this stage, by written consent signed by the parties, all matters at issue were referred to arbitration, but the judge refused to confirm the award because there had been no order of court directing the submission, and at the same time he ordered a reference; from which order there was no appeal. *Held*, that there was no error in directing at a subsequent term that the person, whose rights were asserted by the answers, be made a

party, so that all conflicting claims between the several defendants might be adjusted.

6. SUPPLEMENTAL ANSWER—AWARD.—Permitting the award to be pleaded as an issuable fact in a supplemental answer, after an unappealed order refusing to confirm the award, was not error.

7. IBID.—IBID.—The plaintiff having invited the controversy by the allegations of her complaint, agreed to the submission and opposed the confirmation of the award; the permission afterward given to defendant to plead the award by supplemental answer will not be reversed on plaintiff's appeal, because (1) it was within the chancellor's discretion under equity practice; and (2) it is a right given by statute to plead a fact occurring after the first pleading. *Code, § 195.*

8. AWARD—DEMURRER.—The award having been pleaded only as a fact in the case and not as a final settlement of the matters embraced in it, a demurrer to the plea on the ground that the award was beyond the terms of the submission, not a finality, &c., was properly overruled.

9. FINDINGS OF FACT.—The Circuit Judge sustained in findings of fact which were not without testimony to support them nor against its manifest weight.

10. IBID.—ATTORNEY.—Evidence in this case held sufficient to justify the finding of fact in the court below that a party had acted as attorney for some of the parties to the cause.

11. SPECIFIC PERFORMANCE—INDEBTEDNESS—MORTGAGE.—Where one person holds the legal title to land under agreement to transfer it to B, and then mortgages it, equity will not decree a specific performance of such agreement in favor of B, or those claiming under him, until all indebtedness of B at the date of the decree to the holder of the legal title, is paid to the mortgagee.

12. SALE FOR PARTITION.—A decree directing a sale for partition without the issue of a writ in partition, under evidence showing that partition in kind was impracticable, sustained.

13. PARTITION—RECEIVER.—A receiver of rents of lands pending action for partition, properly appointed, the party in possession being insolvent.

14. ATTORNEY—ESTOPPEL.—One who had, as attorney, advised parties that a certain mortgage was not an outstanding encumbrance on lands about to be purchased by them, cannot afterwards buy this mortgage and assert it as such an encumbrance in favor of another party. And his complaint being dismissed, he was properly required to pay the costs.

15. JUDICIAL SALE—CLERK OF COURT.—A decree may direct a judicial sale to be made by the clerk of court, and is not erroneous because of its failure to further provide in terms that the titles shall be made by such officer.

16. DECREE FILED AFTER SIXTY DAYS.—A decree of the Circuit Court is not invalid because not filed within sixty days after the termination of the term at which the cause was heard.

17. Co-Defendants—Reference.—The court may pass upon the equities between co-defendants, and to this end may order a reference upon the matters to be adjudicated.

18. Costs.—A plaintiff in an action for partition, whose interest is not disputed, should not be required to pay costs accrued in adjusting the conflicting rights and shares of the defendants amongst themselves.

19. Findings of Fact by a referee, concurred in by the Circuit Judge, approved, these findings not being without evidence to sustain them, nor manifestly against the weight of the testimony.

20. Innocent Purchaser.—Where A holds the legal title to land which is a security for all indebtedness of B to him, and B gives his note for an amount due, and this note is transferred by A to C, in action which involves a specific performance between A and B, no inquiry should be allowed as between B and C of the real amount due when such note was given.

21. Evidence.—Books of original entry being destroyed, ledger entries may be received as secondary evidence, the burden of proof being on the maker of a note to show that the note was given for more than was due.

Before WITHERSPOON, KERSHAW, NORTON, and WALLACE, JJ., February and June, 1888, and April and June, 1890.

This case is fully stated in the opinion of this court. It was argued in this court at the November term, 1890, and being ordered for re-argument, was again heard in December, 1891.

*Mr. T. W. Bacot,* for appellants.

*Messrs. C. E. Spencer* and *W. B. Wilson, jr.,* contra.

April 19, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. The two foregoing actions were heard together in the Circuit Court for Chester County, and by agreement the appeals from the decrees in the said causes, respectively, have been heard together in this court.

It may assist this court, in rendering its judgment upon the variety of issues here involved, to have presented in the order of their occurrence the circumstances which have given rise to this contention. Under the will of the late General William R. Davie, William R. Davie, Mary F. Woolf, John M. Davie, and Allen J. Davie, being seized in fee simple, as tenants in common,

of a plantation of land situated in Chester County in this State, on the Catawba River, containing three thousand and seventy-six acres, and known as "Landsford," on the 27th day of March, 1874, conveyed by their joint deed. and for a valuable consideration, one undivided fifth part of the said plantation of land unto Mary F. McCrady, wife of Edward McCrady, the younger, of Charleston, in this State. On the 18th day of November, 1876, William R. Davie purchased, on a credit, the shares in such plantation of Mary F. Woolf, John M. Davie, and Allen J Davie; he agreed to pay for each share the sum of three thousand four hundred dollars. He executed his bond to each one of them in the penalty of six thousand eight hundred dollars, conditioned to pay six hundred dollars on 1st January, 1878, seven hundred dollars on the 1st January, 1879, seven hundred dollars on the 1st January, 1880, seven hundred dollars on the 1st January, 1881, and seven hundred dollars on the 1st January, 1882, with interest on each instalment from maturity until its payment at the rate of ten per cent. per annum. He received deeds from each of said parties, and to secure the payment of each of said bonds, he made a mortgage to each one of the share in said lands that had been conveyed to him by them respectively. Such deeds and mortgages were duly recorded.

In 1877, October 1st, Allen J. Davie assigned the bond and mortgage of William R. Davie to the Rock Hill Manufacturing and Industrial Association, to secure his note for six hundred dollars of that date, payable on 1st January, 1878, with interest at 18 per cent. per annum until paid. This assignment is still held by such Association. On 31st March, 1879, William R. Davie, having failed to pay the bonds secured by mortgage on interest in Landsford lands, held by John M. Davie and Mary F. Woolf, executed a deed to each, whereby he executed a release of his equity of redemption in the one undivided fifth part of Landsford plantation which he had purchased from each one of them and had mortgaged to them respectively, to secure the purchase money of their respective shares therein; and thereby the said John M. Davie and Mary F. Woolf were restored to their original shares of one-fifth each in the Landsford plantation. Edward McCrady, the younger, prepared these deeds. On the same date he pre-

pared a similar deed of release for William R. Davie to execute
to Allen J Davie for his one fifth interest in Landsford plantation.
In a letter written to John J. Hemphill on the 30th July, 1880,
Edward McCrady, the younger, said: "A. J. Davie, I believe,
is now the owner of his one-fifth interest. At the time Col. W.
R. Davie executed the release to J. M. Davie and Mary F. Woolf,
he executed a release also to A. J. Davie, who was then absent,
and left the three releases in my hands as escrows. After A. J.
Davie's return, I delivered them all to him, and he accepted the
delivery of the two others as agent, and, as I understood, accepted
his own at the same time. At any rate, the deed was executed
to him and is in his possession, and I think the best way will be
to allege that he is owner and make him a party."

On the 23 July, 1880, John M. Davie and Mary F. Woolf, as
plaintiffs, commenced an action for the partition of the Landsford
plantation amongst the said John M. Davie, Mary F. Woolf,
William R. Davie, Allen J. Davie, and Mary F. McCrady, so
that each one of them should receive one-fifth part thereof. The
said William R. Davie, Allen J. Davie, and Mary F. McCrady
each acknowledged service of the summons in such action by their
own hands, and the joint answer that admitted the facts stated
therein to be true, and agreed to abide the decree, was signed by
them respectively, and was dated 28th August, 1880. Edward
McCrady, the younger, was the attorney for all of defendants.
On the 4th September, 1880, Allen Jones wrote a letter of in-
quiry to John J. Hemphill, as the attorney for John M. Davie
and Mary F. Woolf (who both resided in the State of Texas),
making inquiries as to what price he would sell their respective
interests in the Landsford plantation for. Allen J. Davie had been
talking to Allen Jones to buy his one-fifth. But before reaching
any conclusion, Allen Jones requested Dr. Thomas C. Robertson,
who was his brother-in-law, to interview Col. W. R. Davie on the
subject of this purchase, with a view of ascertaining if such a step
on his part would be agreeable to the other owners. In a letter
of Allen Jones to Edward McCrady, the younger, who was then
in New York city, dated 22 September, 1880, speaking of this
matter, it is said: "John Hemphill, of Chester, has approached
me several times in purchasing the two Alabama interests in the

Davie lands.  Of course, any purchase on my part must be subject to the wish of the present partners in the property, and upon this point I have interviewed Col. Davie, and he seems *to prefer* my taking an interest.  * * *  Dr. Robertson may take one of the shares if we trade.  I suppose the litigation is virtually at an ·end, but it is supposed about here that there is a possibility of inaugurating another suit."  It may be stated just here that the Davies and Mrs. McCrady are blood relatives.  The Davies are also related by blood to Allen Jones and to the wife of Dr. Thomas C. Robertson.

We have here at this time two sets of circumstances—one showing that John M. Davie, Mary F. Woolf, and Allen J. Davie are anxious to sell their shares in the Landsford plantation, but a new difficulty presents itself—William R. Davie and Allen J. Davie have been sued to judgment by some of their creditors, who are demanding their money, to wit: James R. Seeley *v.* William R. Davie, November 21st, 1878, $1,565.10 ; J. I. Middleton & Co. *v.* William R. Davie, March 17, 1879, $387.33 ; Poole & Hunt *v.* William R. Davie and A. J. Davie, March 13th, 1879, for $323.17 ; Texas Lumber Company *v.* William R. Davie, March 13th, 1879, $670.25.  If a sale should be made of the interests of William R. Davie and Allen J. Davie under these judgments, strangers might become owners of an interest in this property. Besides, William R. Davie might lose his homestead.  Hence the interchange of views of the parties, Allen Jones, Thomas C. Robertson, William R. Davie, and Edward McCrady, the younger.  However, it should be stated that about this time, Allen Jones agreed with Allen J. Davie to purchase his interest in the Landsford plantation, and to pay therefor $1,000 in cash, and to relieve Allen J. Davie of his note and mortgage to the Rock Hill Manufacturing and Industrial Association.  No deed was executed to Allen Jones, although Allen J. Davie applied to Jones to make such deed.  William R. Davie had notice of this transaction.  This last fact appears in three ways:  Dr. Robertson so testifies ; William R. Davie admits that his wife told him that Allen J. Davie told her so; and Allen J. Davie, by a·postal card written to Allen Jones, and dated 26 October, 1880, refers to a message to him from Allen Jones by the hands of William R. Davie.

Allen J. Davie died on the 17 November, 1880, never having been married, and leaving William R. Davie, John M. Davie, and Mary F. Woolf as his only heirs at law. Allen Jones purchased and received a deed for the share of Mary F. Woolf in the Landsford plantation on the 18 December, 1880, and on the same day Thomas C. Robertson purchased and received a deed for the like share of John M. Davie.

Allen Jones and Thomas C. Robertson had agreed to help William R. Davie. Edward McCrady, the younger, as his attorney, was aware of this intention, and assisted in its consideration and performance. It was determined by the parties that William R. Davie's share in the Landsford property should be sold at sheriff's sale, in order to free it from encumbrance. It was also, in furtherance of this scheme, agreed that such sale should be made on 1st Monday in January, 1881, at Chester. Late in the month of December, 1880, Edward McCrady discovered the advertisement of such sale was in error, and at his instance such sale was postponed until first Monday in February, 1881, so that such error might be corrected. Certain it is, that beginning on the 3rd day of February, Jones and Robertson began to buy up the judgments and a mortgage which were liens upon the share of William R. Davie in the Landsford plantation. Under this arrangement, at the sale by the sheriff on the 5th February, 1881, Allen Jones purchased and received title for such share of William R. Davie. Allen Jones always admitted that he had purchased this share for the benefit of William R. Davie, but owing to the financial embarrassment of the latter, the title to the same was subsequently, at the instance of Col. McCrady, executed by Allen Jones to the wife of William R. Davie, Henrietta C. Davie, the purchase money ($2,000) of said interest being raised by her through a loan originally by Pelzer, Rodgers & Co., but finally from Mary F. Davie.

As a factor in these arrangements, was the control and development of the water power on the Landsford property. The persons who alone seemed interested in this enterprise were Allen Jones, Thomas C. Robertson, William R. Davie, and Edward McCrady, the younger. To facilitate and effectuate this enterprise, care was taken that something more than 500 acres of land

of the Landsford plantation were set apart. A survey and plat was made thereof in 1881. In the same year an elaborate abstract of title was prepared by Edward McCrady, junior. A prospectus was published signed by each one of the four parties. Dr. Thomas C. Robertson was, by common consent, entrusted with the scheme. Letters were furnished him through Col. McCrady. Efforts were made both in Charleston, in this State, and New York city to have cotton mills erected. After 1882 nothing further in this direction was attempted.

In February, 1881, the interests of John M. Davie and Mary F. Woolf, as heirs at law of Allen J. Davie, in the Landsford property were purchased, and on salesday of that month, under a judgment obtained against Allen J. Davie in his life-time, his interest in the Landsford property was purchased by Allen Jones, and a deed therefor taken in his own name. All these things happened with the full knowledge thereof by Edward McCrady, the younger, and William R. Davie. During this time, from November, 1880, until after March, 1881, Col. McCrady was the attorney for all these parties, and that he exercised a vigilant care of their respective legal interests will be admitted upon an inspection of the testimony, both oral and documentary, as set out in this "Case." Allen Jones endorsed the note of A. J. Davie to the Rock Hill Manufacturing and Industrial Association, February, 1881. The joint owners of the Landsford property rented the same to other parties from year to year until 1887, William R. Davie having control of the plantation.

On 21st December, 1886, Mary F. McCrady, wife of Edward McCrady, as plaintiff, exhibited her complaint in the Court of Common Pleas for Chester County, against Allen Jones, Thomas C. Robertson, individually and as partners, William R. Davie, and Henrietta C., his wife, Mary F. Davie, Skipwith Wilmer, as assignee of J. I. Middleton and Company, the Rock Hill Manufacturing and Industrial Association, J. B. E. Sloan & Son, and Pelzer, Rodgers, and Company, as defendants, praying for a partition of the Landsford plantation so that she should receive three-fifteenths (3-15) thereof, Allen Jones four-fifteenths (4-15), Thomas C. Robertson four-fifteenths (4-15), and Henrietta C. Davie four-fifteenths (4-15).

Allen Jones answered, claiming that while he did not deny that the plaintiff owned 3 15 of the entire Landsford plantation, yet he owned 6-15 in fee in the whole premises, and in addition thereto that he held 3-15 in the water power tract thereof subject to the equities of William R. Davie therein. He admitted that his original 1-5 in the whole Landsford plantation had been mortgaged to secure a debt due the firm of J. I. Middleton & Company; that he has mortgaged to Pelzer, Rodgers & Co., the 1-5 interest in the Landsford plantation, originally owned by A. J. Davie, but purchased by the defendant, Allen Jones, at sheriff's sale in February, 1881, subject, however, to the mortgage of the Rock Hill Manufacturing and Industrial Association thereon; and that· he had mortgaged to J. B. E. Sloan & Son his 3-15 of the water power tract, containing about 500 acres, as a part of the Landsford plantation, subject, however, to the equities therein of William R. Davie. The defendant, Henrietta C. Davie, answered, alleging that in addition to the 1-5 of the Landsford plantation, for which she had Allen Jones's deed, she was also entitled to the 1-5 of the alleged water power tract mortgaged by Allen Jones to Sloan & Son; that she claimed that the purchase by Jones at sheriff's sale of her husband, William R. Davie's, interest in said Landsford plantation was really in trust for her and every part of such purchase was affected by such trust, and that the mortgage of J. B. E. Sloan & Son was invalid. She also denied Jones's right to mortgage A. J. Davie's original interest to Pelzer, Rodgers & Co. The defendants, Sloan & Son, answered asserting the validity of their mortgage. The defendants, Pelzer, Rodgers & Co., did likewise, and so, also, did the Rock Hill Manufacturing and Industrial Association.

Thus it will be seen that the pleadings made these issues: 1. The division of the Landsford plantation, so that what is known as the water power tract, containing about 500 acres, was a distinct branch or part thereof. 2. The effect of the purchase of William R. Davie's interest in the Landsford property by Allen Jones, in February, 1881; it being contended by the plaintiff and her allies that such purchase, in its entirety, was subject to the same trusts, and that Allen Jones had no right to either hold it for any

other purpose than the payment of its purchase money, $2,000, and the parties to such original sale, or to mortgage it to Sloan & Son. 3. The Allen J. Davie interest, it was contended by the plaintiff and her allies, was held by Allen Jones subject to a further arrangement between the original co-tenants of the Landsford property, and could not be mortgaged by him. It must be borne in mind that there is no issue herein as to the right of the plaintiff to her one-fifth, to the one-fifth of Allen Jones, purchased from Mary F. Woolf and mortgaged to J. I. Middleton & Co., to the one-fifth of Thomas C. Robertson, purchased from John M. Davie and mortgaged to J. I. Middleton & Co., and to the one-fifth (except the 500 acres embraced in the water power tract) conveyed by Allen Jones to Henrietta C. Davie.

After the parties to this action were at issue, by an agreement signed by the plaintiff and all the defendants, an arbitration was agreed upon, which is as follows :

"Whereas differences have arisen between us, Henrietta C. Davie, the wife of William R. Davie, and Allen Jones and Thomas C. Robertson, in relation to the proportion and extent of shares to which the said Henrietta C. Davie, Allen Jones, and Thomas C. Robertson, respectively, are entitled under certain conveyances made by the sheriff of Chester County to Allen Jones of certain undivided interests in and to a certain tract or plantation of land, situated on the Catawba River, Chester County, formerly the property of the late General William R. Davie, known as the Landsford plantation, which said plantation is more particularly described in the pleadings in a certain cause in the Court of Common Pleas for Chester County, entitled Mary F. McCrady, plaintiff, against Allen Jones and others, defendants ; and also as to the right of the said Allen Jones to have mortgaged certain interests therein to certain persons, to wit, to Messrs. Pelzer, Rodgers & Co., and to Messrs. J. B. E. Sloan & Son, and as to the validity of the mortgages given by the said Allen Jones to the said persons, so far as the same in any wise affect the interest of the said Henrietta C. Davie. And, whereas, the said Henrietta C. Davie and the said Allen Jones and Thomas C. Robertson, and the other parties hereto, are anxious to bring the same to a speedy and friendly adjustment :—

"Now, therefore, we, the said Henrietta C. Davie, Allen Jones, Thomas C. Robertson, Francis J. Pelzer, Francis T. Rodgers, W. G. Muckenfuss, T. S. Inglesby, and Francis J. Pelzer, the younger, copartners, doing business together as Pelzer, Rodgers & Co., and J. B. E. Sloan and Lewis F. Sloan, copartners, doing business together as J. B. E. Sloan & Son, do hereby mutually covenant and agree to and with each other to submit to the arbitration of Thomas W. Bacot and Charles E. Spencer, Esquires, all said matters of differences, and any and all other matters of difference, as the same appear or arise from the pleadings in the said cause above mentioned to which the parties hereto are therein parties defendant. And we do hereby authorize and empower the said Thomas W. Bacot and Charles E. Spencer, in case they cannot agree in the said arbitration, or in case of any difference of opinion between them arising out of the matters submitted, incidentally, or otherwise, to call in, nominate, and appoint some third person, the same to be a counsellor at law, who, together with the said Thomas W. Bacot and C. E. Spencer, shall consider the said matters of difference between the said parties as the same shall appear or arise between the said parties from the said pleadings, and shall hear the parties hereto, and shall hear and receive any legal testimony the said parties may offer in relation to the same, and decide, determine, and arbitrate all such matters of difference hereby submitted. The decision and arbitration thereof of any two of the said arbitrators shall be binding and conclusive upon the said parties hereto. And it is hereby mutually covenanted and agreed to and with each other by the parties hereto that the decision, arbitrament, and award of the said Thomas W. Bacot and the said Charles E. Spencer, if they shall agree in the same, or of any two of the said arbitrators and such person as they may call in, in case they cannot agree, shall be well and faithfully kept and be performed, and that the said parties hereto, or any of them, shall and will execute any deed or deeds, release or releases, acquittance, or discharge as the said arbitrators shall or may direct, decide, and award.

"And the said Mary F. McCrady consents and agrees to and with the parties above mentioned, that any order or decree which

may be directed by the said arbitrators above, named and pro-
vided, shall be entered as an order or decree in the said cause
above mentioned, wherein she is plaintiff and the other parties
hereto are defendants. And the said Mary F. McCrady, Hen-
rietta C. Davie, Allen Jones, Thomas C. Robertson, Pelzer,
Rodgers & Co., and J. B. E. Sloan & Son, Frederick G. Frazer,
and J. Alvin Ball, executors of the late Mary F. Davie, parties
to the said cause above mentioned, do hereby further authorize
and empower the said Thomas W. Bacot and C. E. Spencer,
after a decision and award has been made as ,to the said matters
of difference between the parties above mentioned aforesaid, to
allot, partition, and divide the said plantation in kind among and
to the parties hereto in such shares and proportions as they may
decide, arbitrate, and award as above, or direct the same to be
sold and the proceeds of sale to be divided in such shares and
proportions, with all the powers as if they, the said Thomas W.
Bacot and Charles E. Spencer, had been duly appointed com-
missioners in partition by a decree of the court in said cause.
And in case the said Thomas W. Bacot and Charles E. Spencer
cannot agree upon such partition in kind or to such sale for par-
tition, then, in that case the said Thomas W. Bacot and Charles
E. Spencer are hereby authorized to call in some third person as
hereinbefore provided, and any two of the said three are hereby
authorized and empowered to make partition in kind or to direct
such sale as they may decide and award.

"And it is hereby further agreed that such arbitration and
award shall be entered as a decree, by consent, in the cause above
named; which cause shall not be deemed discontinued by this
agreement to arbitrate, but shall stand to carry out the award
when made, as a final determination of the matters of difference;
and which decree shall authorize, direct, and empower the said
Thomas W. Bacot and C. E. Spencer, in accordance with the
said award, to allot, partition, and divide the said plantation in
kind among and to the respective parties in interest, or in case a
partition in kind cannot be had, to sell the said plantation as a
whole, according to law and the practice of the Courts of Com-
mon Pleas in such cases, and to execute and deliver good and
sufficient deeds to the respective parties in interest in case of

partition in kind, or to the purchaser, in case of a sale, in the event that the parties themselves, or any of them, shall not be alive at the time, or, being alive, shall neglect or refuse to execute and deliver such deeds, with all the powers as if they, the said T. W. Bacot and C. E. Spencer, had been duly appointed commissioners in partition by a regular decree of the court in said cause. And if they, the said T. W. Bacot and C. E. Spencer, cannot agree upon a partition in kind, or upon a sale, then to call in some third person, and any two of the said three shall be authorized, directed, and empowered to allot, partition, and divide in kind, or in case a partition in kind cannot be had, to sell and execute and deliver deeds as aforesaid."

Thomas W. Bacot and Charles E. Spencer undertook the aforesaid work, calling to their aid Robert W. Shand, Esquire, a counsellor at law, as umpire. In the presence of said umpire all the testimony taken was offered, although he did not actually participate in the work of the arbitrators until Thomas W. Bacot and Charles E. Spencer had failed to agree. This event occurring, Mr. Shand, at their request, joined in the work of the arbitration. The following award was made :

"The undersigned, C. E. Spencer, arbitrator, and R. W. Shand, umpire, under the agreement to award herein, executed by the following named defendants to the cause, Allen Jones, T. C. Robertson, Henrietta C. Davie, Francis J. Pelzer, F. S. Rodgers, W. G. Muckenfuss, T. S. Inglesby, Francis J. Pelzer, jr., J. B. E. Sloan, Lewis F. Sloan, and Mary F. McCrady, do make our award as follows :

"*First.* As to the legal title to the Landsford property, described in the complaint, without regard to equities or encumbrances : 1. That Mrs. Mary F. McCrady is seized of one undivided fifth part of the whole. 2. That Mrs. Henrietta C. Davie is seized of one undivided fifth of said property, not including the water power tract of 500 acres, more or less, as per the Stewart survey of April, 1882. 3. That Thomas C. Robertson is seized of one undivided fifth of the whole. 4. That Allen Jones is seized of two undivided fifths of the whole, and in addition to one undivided fifth of the water power tract.

"*Second.* As to the equitable title and encumbrances : 1. That

an undivided fifth interest in the whole property is in Mrs. Mary F. McCrady, free of encumbrances. 2. That one undivided fifth of the property, not including the water power tract, is in Mrs. Henrietta C. Davie, subject to the mortgage set up in the answer of the executors of Mrs. Mary F. Davie. In this connection, we further find and award that the original undivided fifth interest of William R. Davie, became invested in Allen Jones, for the benefit of the said William R. Davie, or for such other person as he or his counsel, Col. McCrady, might direct; that subsequently the said Jones conveyed to Mrs. Davie the interest awarded to her above; that prior to the sitting of the arbitrators no direction had been made as to the water power interest, except when the said Allen Jones had been excused from obeying it; that we decree from the testimony that the direction has been made before us; and therefore we conclude and award that the equitable title to one undivided fifth of the water power tract is now in Mrs. Henrietta C. Davie, but subject to the payment of the real amount due by W. R. Davie upon his note of $1,665.06, described in the mortgage set up by the answer of J. B. E. Sloan & Son, after a settlement of the accounts between the said W. R. Davie and the said Allen Jones, or Jones & Robertson, the testimony being too defective for us to state the accounts; and also subject to any balance due them (Jones & Robertson) if it shall appear that the balance fall to them. 3. That one undivided fifth interest in the whole property is in Thomas C. Robertson, subject to the payment of the amount due upon the Middleton mortgage to the real holders thereof, upon which point the proof before us is defective; and in addition thereto, that one undivided fifteenth interest in the whole property is in him, also subject first to the debt due by Allen J. Davie to the Rock Hill M. and I. Association, to secure which it holds the bond and mortgage set out in its answer, and then to the mortgage of Pelzer, Rodgers & Co., as set out in their answer. 4. That one undivided fifth interest in the whole property is in Allen Jones subject to the payment of the amount due upon the Middleton mortgage to the real holders thereof, upon which point the proof before us is defective; and that in addition thereto, one undivided fifteenth interest in the whole property is in him, also

subject first to the debt due by Allen J. Davie to the Rock Hill M. and I. Association, to secure which it holds the bond and mortgage set out in its answer, and then to the mortgage of Pelzer, Rodgers & Co., as set out in their answer. 5. That one undivided fifteenth interest in the whole property is in William R. Davie, to which the legal title is in Allen Jones, as before found and awarded. But as the said William R. Davie is not a party before us, we do not pass upon any equities as between him and the said Allen Jones, or as between him and the said Pelzer, Rodgers & Co.

"We further find and award that partition of the premises in kind is impracticable, and that it is necessary to sell the same in order to make a division; and that the water power tract and the remainder of the land will have to be sold separately, unless all the parties to this arbitration come to an agreement in writing (to be attached to this award), that the entire place be sold in one body, in which event our award is that it be so sold. We recommend that the accounts between W. R. Davie and Jones & Robertson be taken in this cause, with a view to ascertain what charge there is upon the present interest of Mrs. Henrietta C. Davie in the water power tract; and that the amounts due respectively upon the two Middleton mortgages be likewise established in this proceeding, until which adjustment let the funds representing the interests involved be retained by the court. William R. Davie was before us as a witness, and having every reason to believe that a sale of the premises would be awarded, he made no objections, and therefore we take it that he is entirely willing that his equitable interest be transferred to the fund to arise from the proceeds of sale; but we recommend that he be made a party to this cause with a view that the equities between himself and Allen Jones and Pelzer, Rodgers & Co., also referred to, be adjusted; until such adjustment let the said fund remain in the hands of the court. We further recommend that the sale be for one-third cash, and the balance on a credit of one and two years, in equal instalments, with interest from the day of sale, to be secured by the purchaser's bond and a mortgage of the purchased premises, with leave to him to pay his entire bid in cash; and that it be had on salesday in November, 1887, or at such

other day as the court may direct, at Chester Court House, after due advertisement." Under seal and dated 4th day of August, 1887.

The other arbitrator, Thomas W. Bacot, Esq., on the same day and under his seal, made an award, wherein he set forth the fact that the award of the majority of arbitrators had exceeded the powers under the deed of submission by the parties thereto, both in subject matter, and in attempting to settle the rights of persons not parties to the submission. He also took issue with them as to their findings. While the paper prepared by Mr. Bacot was logical, strong, and comprehensive in its treatment of the points at issue, we cannot reproduce it here, because, strictly speaking, it does not relate to the matters here to be considered by this court, and this reference is made to it because we deem. it but an act of justice to its author to thus explain its absence from our opinion.

A motion was made before Judge W. H. Wallace, who was presiding at the fall term of the Court of Common Pleas, for Chester County, in 1887, to confirm the award of Mr. Spencer and Mr. Shand and make it the judgment of the court, and on the 14th December, 1887, Judge Wallace filed his decree, refusing the motion on the ground that the action between the parties to the arbitration was pending in court at the time of its submission to arbitration, and no rule of court having been obtained therefor, under the authority of *Parnell* v. *King*, Rice, 376, no judgment could be rendered confirming the same against the wishes of any party thereto. From this decree there was no appeal. But by the same decree, it was ordered, on motion of the plaintiff's attorney, that the case be referred to John C. McFadden, clerk of the court, to take the testimony and report the same to the court.

After due notice therefor, on the 16th February, 1888, the defendants, Allen Jones, Thomas C. Robertson, and J. B. E. Sloan & Son, moved before his honor, Judge Witherspoon, for leave to file supplemental answers embodying therein, as a part thereof, the submission to arbitrators and their award, and also for an order extending and enlarging the order of reference in the cause, so that testimony should be taken by Mr. McFadden,

clerk of court, upon the issues raised and sought to be raised by such supplemental answers. The motions were resisted before Judge Witherspoon, and on the 25th day of February, 1888, he filed the following order :

"The defendants, J. B. E. Sloan & Son, Allen Jones, and Thomas C. Robertson, moved before me at chambers for leave to file supplemental answers in the above entitled case. It appears that the defendant, Thomas C. Robertson, has never filed an original answer in the cause, and therefore has no right to file a supplemental answer. The motion as to the defendant, Thomas C. Robertson, must be refused. The grounds for and against the motions of the other defendants, Sloan & Son and Allen Jones, being the same, they will be considered together. Inasmuch as the defence sought to be set up by these defendants arises out of facts occurring subsequent to their respective former answers, the right to file supplemental answers is addressed to the discretion of the court. No reason exists for withholding the leave to file supplemental answers, unless the granting such leave would in effect be reviewing the order of Judge Wallace made in the cause, or unless that order should be regarded as such a step in the cause, after the occurrence of the matters sought to be pleaded as would preclude the parties from now entering the plea. It appears that the plaintiff moved before Judge Wallace for an order of reference to take the testimony. At the same time the defendants moved before Judge Wallace for the confirmation of a certain award, and to have such award made the judgment of the court. Judge Wallace refused the defendants' motion upon the ground that the submission to arbitration had not been made by rule of court, as the action was pending in court when the submission was made. Judge Wallace further ordered a reference to take the testimony and report the same to the court. The point that the award could not be set up by a direct proceeding to that end was not before Judge Wallace. I hold that the granting of defendant's motion will not in effect be reversing Judge Wallace's order.

"It is true that the cause was on the calendar and was not heard, and in that sense, there was a continuance since the alleged award was made, but there was no decided step made in

the cause by its simply going over for trial to the next term. The order of reference simply directs the referee to take the testimony and report the same to the court, and it appears that no reference has been held, or notice of reference given. I do not think that there has been such a step in the progress of the cause after the occurrence of the matters sought to be pleaded as would preclude the defendants, Sloan & Son and Allen Jones, from entering the plea contained in their supplemental answers. I, therefore, grant the motion of the defendants, Sloan & Son and Allen Jones, for leave to file their respective supplemental answers. The merits of the award above referred to are not before me and can only be considered when the case is called for hearing in its regular order. It will then be time enough to consider whether or not the supplemental answers affect W. R. Davie. It is sufficient to say that if the order of reference should be enlarged so as to include testimony upon the issues presented in the supplemental answers, it will be time enough to apply to have the order enlarged in open court, after the issue is joined under the supplemental answers. I must therefore refuse that part of the motion of the defendants, Sloan & Son and Allen Jones, which seeks to enlarge the order of reference so as to have the referee take testimony upon the issues raised by the supplemental answers."

Notice of intention to appeal from Judge Witherspoon's order was served by Mary F. McCrady, Henrietta C. Davie, and the executors of Mary F. Davie, deceased, on the 2nd March, 1888, less than ten days after such order was filed. The grounds of appeal will hereinafter appear, and will be considered by this court in their chronological order.

The supplemental answers were served. The plaintiff demurred to each of said answers, upon five grounds : 1. That the award is not in conformity with the terms of the submission as set forth in the said answer. 2. That the award is indefinite and uncertain in that it awards that Henrietta C. Davie is seized and possessed of one undivided fifth of said property, not including the water power tract of 500 acres, more or less, as per Stewart survey of April, 1882, no such survey being made a part of said award ; and in that it directs the water power tract and

the remainder of the land to be sold separately, without any partition, division, or description of the said water power tract by the said award. 3. That it does not appear by the said award that the said C. E. Spencer and R. W. Shand did allot, partition, and divide the said plantation in kind among and to the respective parties in interest, or award to sell the said plantation as a whole, according to law and the practice of the Court of Common. Pleas in such cases, as provided in the terms of submission. 4. That the award is not final and conclusive, and is, therefore, void. 5. That there is clear, patent, and manifest error both of law and fact, appearing upon the face of the award.

At this juncture a new element was injected into the litigation. Edward McCrady, the younger, exhibited his complaint in the Court of Common Pleas for Chester County, against William R. Davie, Henrietta C. Davie, Allen Jones, The Rock Hill Manufacturing and Industrial Association, and the different partners associated as Pelzer, Rodgers & Co. The new plaintiff claimed to have bought the bond and mortgage executed by W. R. Davie to Allen J. Davie, and by him pledged to Rock Hill &c. Association, the bond and mortgage so purchased having been executed 18 November, 1876. The defendants, Allen Jones and Pelzer, Rodgers & Co., vigorously denied that there was anything due on this bond and mortgage, except what was due to Rock Hill M. & I. Association; certainly there was nothing due the plaintiff in this second suit. And that, however these things might be, the said plaintiff was estopped from setting up said bond and mortgage by reason of the purchase of the Allen J. Davie interest, in February, 1881, under the advice of said Edward McCrady, the younger, as counsellor at law, as attorney for the parties so purchasing such interest.

On the 27th day of March, 1888, his honor, Judge Witherspoon, passed the following order, with the consent of all parties, in the first case; Mrs. McCrady, plaintiff, *v.* Jones *et al.*, defendants:

"On motion of Wilson & Wilson and C. E. Spencer, Esq., attorneys for certain defendants in above stated case, and with the consent of Edward McCrady, jr., Louis DeB. McCrady, and T. W. Bacot, the attorneys for all other parties to said case, it is

ordered : 1. That William R. Davie, John R. London, and A. E. Hutchison be made parties to said cause, and that summons and copies of complaint be served upon them to answer thereto within twenty days from the service thereof. 2. That in case the plaintiff demurs to the supplemental answers served upon her on the 7th March, 1888, her demurrer shall stand to be argued when the case is heard on the report of the referee, appointed to take the testimony, notwithstanding that testimony has been taken after the filing of the demurrer. 3. That the case of Edward McCrady, the younger, against William R. Davie and others, suit for foreclosure, be, and is hereby, consolidated with this case. 4. That the order of reference heretofore made in this case by Judge Wallace, is hereby extended and enlarged so as to allow testimony to be taken on the new matter introduced by the supplemental proceedings, and also upon the issues in the said foreclosure suit of McCrady *v.* Davie and others. 5. That these amended pleadings be perfected by the 1st day of May, 1888, and that the references commenced on the 16th day of May, 1888. 6. That these orders and subsequent proceedings be taken without prejudice to the appeal from the order allowing supplemental answers to be filed, notice of which has been duly given, and which will stand to be heard when the case reaches the Supreme Court on its merits."

The new defendants, W. R. Davie and Jones and Robertson, filed their answers on the 16th May, 1888. At the reference, upon agreement, the notes of testimony taken before the arbitrators in August, 1887, with such modifications and corrections as the witnesses should indicate in their testimony before the referee, were allowed. Other testimony was also taken, in all covering 122 printed pages. At the hearing of the two causes an affidavit from Allen Jones and Thomas C. Robertson was submitted as the basis for an application for the appointment of a receiver for the Landsford property, and in opposition thereto an affidavit of William R. Davie was submitted. Of course, a notice of such application accompanied the affidavit.

At the hearing before Judge Kershaw, which occurred during the June term, 1888, of the Court of Common Pleas for Chester County, the two cases were heard upon the pleadings and the

testimony.　Judge Kershaw, on the 25 January, 1890, filed the
following decree :

## DECREE OF JUDGE KERSHAW.

"By agreement of counsel. the cases above stated were heard
together.　The first is an action for partition of real estate, and
the second for the foreclosure of a mortgage of an undivided in-
terest claimed to exist therein.　The decision of the case has been
delayed far beyond the proper time by the illness of the presid-
ing judge, and the great difficulty of arriving at the facts of the
case on account of the many issues presented, the contradictory
character of the testimony, and the wide range it has taken.

"The facts, so far as necessary to be stated, are as follows:
On or about the 27th day of March, 1874, William R. Davie,
Mary F. Woolf, wife of Stephen M. Woolf, John M. Davie, and
Allen Jones Davie, being then seized and possessed as tenants
in fee of the lands described in the first paragraph of the com-
plaint of Mary F. McCrady herein, known as Landsford, for valu-
able consideration executed their deed to the said Mary F. Mc-
Crady, conveying an undivided one-fifth part of the said land,
and subsequently having discovered that the deed was insufficient
in law to convey the same by reason of the presence and subscrip-
tion thereto of only one witness, they ratified and confirmed to
Mary F. McCrady the title to the interest intended to be con-
veyed by their proper deed of release and confirmation bearing
date the 9th day of February, 1877, duly executed and recorded,
whereby the said one-fifth interest in the said Landsford estate
vested in her in fee.　On the 18th day of November, 1876, the
said William R. Davie purchased the interests in said land of
Mary F. Woolf, John M. Davie, and Allen J. Davie, and gave to
each of them a mortgage upon their respective shares to secure
the payment of the purchase money for the same.　On the 12th
day of October, 1877, Allen J. Davie, being indebted to the Rock
Hill Industrial Association by his note for the sum of six hundred
dollars, with interest from the 1st day of January, 1878, at 18
per cent. per annum, payable monthly, the better to secure the
payment thereof, did pledge, mortgage, and transfer to the said
Rock Hill Manufacturing and Industrial Association the said

bond and mortgage executed to him by the said W. R. Davie as aforesaid for the purchase money of the portion by him sold to said W. R. Davie; and the said debt of Allen J. Davie to the Rock Hill Manufacturing and Industrial Association still remains due and unpaid, with interest as aforesaid.

"W. R. Davie found himself unable to pay for the interests of his co-tenants in Landsford which he had purchased, and in 1879 the parties agreed with him to rescind the same. Accordingly, in 1880 releases from W. R. Davie to John M. Davie and Mary F. Woolf were duly executed, recorded, and dated 31st March, 1879, which conveyed to them respectively, and reinstated them in the estates formerly held by them in said land; and on the 15th day of December, 1880, Mary F. Woolf sold and conveyed her one-fifth interest in said land to Allen Jones, and on the 18th December, 1880, John M. Davie in like manner sold and conveyed his one fifth share in the said lands to Thomas C. Robertson, whereby those interests became vested in them respectively. At the same time that the releases were made by William R. Davie to Mrs. Woolf and John M. Davie, a similar release by him duly executed was delivered with them to Mr. Edward Mc-Crady, jr., releasing and conveying to Allen J. Davie his former estate in said lands, but said release was never delivered to Allen J. Davie, having been destroyed by accident while in possession of General McCrady. Another release was after prepared in the same form and delivered to Allen J. Davie by General McCrady unsigned, and was never executed.

"Allen J. Davie resided in Texas, but after these releases had been executed, he returned to this State and resided at Landsford with W. R. Davie, farming and enjoying an interest in a mill thereon until November, 1880, when he bargained his interest in Landsford to Allen Jones for the sum of one thousand dollars in cash, and the assumption by said Jones of his debt to the building and loan association, or the Rock Hill Manufacturing and Industrial Association, as more properly called. This debt was for the sum of six hundred dollars, with interest from the 1st day of January, 1878, payable monthly, and was secured by the pledge and transfer of W. R. Davie's mortgage to Allen J. Davie on his share of Landsford. The bargain was complete, and nothing re-

mained to be done but the payment of the money and the execution of the title deed, when Allen J. Davie suddenly died on the 18th day of November, 1880. These negotiations were made known to W. R. Davie, and no notice was given to Allen Jones that the legal title was not in Allen J. Davie. William R. Davie, John M. Davie, and Mary F. Woolf were the heirs at law of Allen J. Davie.

"The tenants of the land residing in this State were all desirous of acquiring the interest of Allen J. Davie, and retaining it to some one or more of them. in order that they might have the control of it without the intervention of any stranger. There was upon the place a most valuable water power, which they desired and hoped to have developed by capitalists seeking investments of that character, and from which they expected most profitable results, and the control of the property among themselves, acting harmoniously as relations and friends, would promote what they regarded as the common interests of all. They were also actuated by a desire to relieve William R. Davie from his embarrassments, and if possible secure to him the enjoyment of his share of the estate upon which he resided. Accordingly, Thomas C. Robertson purchased the undivided 5th part of Landsford of John M. Davie, and the same was duly conveyed to him by deed bearing date the 18th day of December, 1880, which was duly recorded. And on the 15th day of December, 1880, Allen Jones purchased and had conveyed to him by proper deed the undivided interest of 1-5 part of said land of Mary F. Woolf, which deed was duly recorded. And subsequently, on the 3rd day of February, 1881, Allen Jones and Thomas C. Robertson acquired the interests of Mary F. Woolf and John M. Davie, as heirs at law of Allen J. Davie in said lands, by their deed of that date duly executed and for valuable considerations, which deed was also duly entered of record.

"Allen J. Davie, in his life time, to wit, 12th October, 1877, had assigned the mortgage made to him by William R. Davie, to secure the purchase money of his share of the land sold by him to William R. Davie, to the Rock Hill Manufacturing and Industrial Association, to secure his note to them for $600, and a judgment had been obtained against William R. Davie and himself

by Poole & Hunt, of Baltimore, and other judgments had been obtained against William R. Davie, to wit: In favor of James R. Seeley, J. I. Middleton & Co., Poole & Hunt, Texas Lumber Co., and W. L. Edwards. After the death of A. J. Davie, it was ascertained that there was no release on record to him from William R. Davie, and the parties interested were much concerned about the best method of securing the legal title to his share in the estate. After consulting with Gen. McCrady, and considering whether it was best to foreclose the mortgage held by the Rock Hill M. & I. Association, Allen Jones assumed and guaranteed the payment of their claim, and with Thomas C. Robertson purchased and obtained control of the judgments against Allen J. Davie and William R. Davie, and the interests of the said W. R. and A. J. Davie were sold under the executions against them and bought in by Allen Jones with the knowledge and approval of all the parties, Gen. McCrady being present advising and co-operating with him at the sale.

"On the 25th day of May, 1881, Allen Jones declared in writing, in a letter to Gen. E. McCrady, jr., certain trusts upon which he held the property purchased by him at sheriff's sale as aforesaid, which he stated to have been created in pursuance of an agreement made between him and William R. Davie before the sale. He declares as follows: 'I want it to be well understood that I am holding one-fifth interest in the five hundred acre mill tract in my name, but it really belongs to Col. Davie, and I am ready at any time to transfer it as you direct.' It appears that he was directed to convey the said interest to Henrietta C. Davie, and she is regarded by Allen Jones to be entitled to said interest under this trust. Gen. McCrady, as has been said, was present at the sale to Jones by the sheriff, and was advising and co-operating with him. In these proceedings he was confided in as the friend and legal adviser of Allen Jones and Thomas C. Robertson, though he was especially charged with the interests of Mrs. M. F. McCrady and W. R. Davie and represented them. He was never paid anything as the attorney of Jones and Robertson, except that once he received from them a portion of his travelling expenses.

"Allen Jones and T. C. Robertson either assumed the payment

of money or advanced it for the purpose of paying for or procuring the control of the judgments necessary to enable them to satisfy the bids upon the land, but afterwards Gen. McCrady negotiated a loan from Pelzer, Rodgers & Co. for two thousand dollars, and sent seventeen hundred and ninety-five dollars and fifty cents to Allen Jones to relieve him in regard to the amount he had paid out in the aforesaid purchases, and claims to have properly accounted to him for the remainder of said loan. This loan was secured by the bond of Henrietta C. Davie, wife of William R. Davie, dated March 5th, 1881, and a mortgage on her interest in the estate conveyed to her by Allen Jones, as hereinafter stated, and also by a note of Allen Jones, T. C. Robertson, W. R. Davie, and Edward McCrady, jr. The sheriff made and delivered to Allen Jones two several deeds, conveying to him by separate deeds the interests of Allen J. Davie and W. R. Davie, in pursuance of the sales by him made as aforesaid. Whereupon Allen Jones, with the approval of Gen. McCrady, conveyed to Henrietta C. Davie, wife of W. R. Davie, one undivided fifth part of said Landsford plantation, 'saving and excepting therefrom five hundred acres on Catawba River, lying around and adjoining the mill site and canal, as the same shall hereafter be laid out conveniently thereto.' The consideration named in said deed is $2,000. This is the interest described in the mortgage of H. C. Davie to Pelzer, Rodgers & Co., as above mentioned. Early in January, 1881, Allen Jones and T. C. Robertson formed a copartnership for the transaction of business as merchants at Rock Hill, but their purchases of interests in this land were made individually and not as copartners.

"In 1880, J. M. Davie and Mary F. Woolf commenced an action for the partition of said land against W. R. Davie, Mrs. M. F. McCrady, and Allen J. Davie, defendants, stating in their complaint that each of the parties was seized of an undivided fifth interest in fee in the said property, to which W. R. Davie, Allen J. Davie, and Mrs. Mary F. McCrady, the defendants, put in their answer, drawn by Gen. McCrady, admitting the facts stated in the complaint to be true, and abiding the decree of the court upon the same, the answer being signed by the parties in their own proper persons, the same bearing date August 28th, 1880.

On the 30th July, 1880, Gen. McCrady wrote Mr. Hemphill in relation to said suit, saying: 'I believe A. J. Davie is now the owner of his 1·5 interest. At the time W. R. Davie executed the releases to Mrs. Woolf and J. M. Davie, he executed also a release to A. J. Davie, who was then absent, and left the then releases in my hands as an escrow. After A. J. Davie's return, I delivered them all to him, and he accepted the delivering of the others as agent, and, as I understood, accepted his own at the same time. At any rate, the deed was executed to him, and is in his possession, and I think the best way will be to allege that he is owner and make him a party.' In a letter to Mr. Hemphill, the attorney of plaintiffs in said suit, he wrote on July 27th, 1880: 'You have omitted A. J. Davie as a party. You thus have only 4-5ths represented. He is the owner of another 1-5th, which 1-5th is encumbered by a mortgage,' &c.

"Among the encumbrances on the estate taken up by Allen Jones was a mortgage of two acres of the land which had been purchased by W. R. Davie for the benefit of the estate from one Davidson, who was in possession of them, to secure which W. R. Davie had given a mortgage on the two acres of land and also one on a mill and machinery then on the place, but was subsequently removed by W. R. Davie to another part of the land. For this Allen Jones paid five hundred and fifty dollars.

"On the 30th July, 1881, Gen. McCrady prepared and sent to Jones & Robertson an abstract of title to the Landsford estate, in which it was stated that the interests of the parties therein were as follows, to wit: Mary F. McCrady, 3-15; Allen Jones, 4-15; T. C. Robertson, 4-15; Henrietta C. Davie, 4-15. This statement is in contravention of the claim of Robertson & Jones, and neither of them made known any objection to this statement to Mr. McCrady or the other parties. The purpose of the abstract was to furnish a statement, to be shown by Robertson to parties treating with him for the water power for an interest therein, of the disposition of which T. C. Robertson then had charge. This is claimed by the plaintiff to operate as an estoppel against any claim contrary to the statements contained in the abstract of title.

"On the 12th day of October, 1877, Allen J. Davie being in-

debted to the Rock Hill Industrial Association by his note for the sum of six hundred dollars, with interest from the 1st day of January, 1878, at 18 per cent. per annum, payable monthly, the better to secure the payment thereof, he did pledge, mortgage, and transfer to the said Rock Hill Manufacturing and Industrial Association the said bond and mortgage executed to him by the said W. R. Davie as aforesaid for the purchase money of his share of Landsford by him sold to said W. R. Davie; and the said debt of Allen J. Davie to the Rock Hill Manufacturing and Industrial Association still remains due and unpaid, with interest as aforesaid, and in their answer herein the said Rock Hill Manufacturing and Industrial Association ask for judgment and for foreclosure, &c.

"On the first day of February, 1886, the defendants, Jones & Robertson, made their promissory note, whereby they promised to pay to Pelzer, Rodgers & Co., on the 1st day of December, 1886, the sum of five thousand dollars, for value received, and on the same day Allen Jones, a member of said firm of Jones & Robertson, in order to secure the payment of said note, executed and delivered to said Pelzer, Rodgers & Co. his deed, and thereby conveyed, by way of mortgage to the said Pelzer, Rodgers & Co., one equal undivided fifth part or share in the said Landsford estate described in the complaint, subject, however, to the encumbrance of the mortgage above mentioned, executed by W. R. Davie to Allen J. Davie, and by him assigned to the Rock Hill Manufacturing and Industrial Association; and no part of said note and mortgage has been paid, and they pray in their answer for the sale of the premises mortgaged, and the application of the proceeds to their debt after first satisfying the mortgage debt due to the Rock Hill Manufacturing and Industrial Association as aforesaid.

"On the first day of May, 1881, W. R. Davie, Edward Mc-Crady, jr., Allen Jones, and T. C. Robertson executed and delivered their bond of that date, conditioned for the payment to M. F. Davie of the sum of two thousand dollars one year after the date thereof, with interest from date, payable semi annually on the first day of May and the first day of November; and on the 5th day of March, 1881, Henrietta C. Davie executed and

delivered to Edward McCrady, jr., her bond in the penal sum of four thousand dollars, conditioned for the payment of two thousand dollars one year from the date thereof, with interest from the date. And the said Henrietta C. Davie, in order to secure the payment of said bond, executed and delivered to the said Edward McCrady her mortgage, dated the same day, of all that undivided fifth part of the plantation known as Landsford, excepting, however, therefrom five hundred acres thereof on the Catawba River, lying around and adjoining the mill site and canal, as the same shall hereafter be laid out conveniently thereto; and the said bond and mortgage of the said H. C. Davie to the said Edward McCrady were duly assigned by him to the said Mary F. Davie as collateral security to secure the bond of W. R. Davie, Edward McCrady, Allen Jones, and T. C. Robertson to the said M. F. Davie above described.

"On the 6th day of December, 1883, Allen Jones gave his note to J. I. Middleton & Co. for seven thousand five hundred dollars, payable on demand, and to secure the same he executed and delivered to the said J. I. Middleton & Co. a mortgage of the undivided one-fifth interest in the Landsford property, the subject of this action, conveyed by M. F. Woolf to the said Allen Jones December 18th, 1880. And on the 6th day of December, 1883, T. C. Robertson made and delivered to the said J. I. Middleton & Co. his note for seven thousand five hundred dollars, payable on demand, and to secure the same, on the same day the said T. C. Robertson executed and delivered to the said J. I. Middleton & Co. a mortgage of the undivided one-fifth interest in the said Landsford property conveyed by J. M. Davie to the said T. C. Robertson December the 18th, 1880. On the 21st December, 1887, the defendant, Skipwith Wilmer, trustee of J. I. Middleton & Co., being duly authorized and empowered so to do, transferred and delivered the two notes and mortgages next above described to the defendants, John R. London and A. Eugene Hutchinson, for value, to secure them against any loss or damage by reason of their endorsements for the said Allen Jones and T. C. Robertson by the said London and Hutchinson, amounting to the sum of ninety-three hundred and eighty-eight and ninety-five one-hundredths dollars, payable on or about the 4th day of May,

1888, with interest after maturity at eight per centum per annum.

"On the 1st day of November, 1885, the firm of Jones & Robertson was indebted to J. B. E. Sloan & Son, defendants herein, in the sum of three thousand five hundred and ninety-five 88-100 dollars, payable that day, and on the 19th day of March, 1886, the said indebtedness still remaining due and unpaid, the said Allen Jones, the defendant, a member of the firm of Jones & Robertson, in order to secure said indebtedness, executed and delivered to the said J. B. E. Sloan & Son his mortgage deed, whereby he released and conveyed to them, their heirs and assigns, 'all his right, title, claim, and interest in and to an undivided one-fifth (1–5) part of a parcel or tract of land, situated on Catawba River, in the County of Chester, in said State, and known as the Landsford Water Power tract, containing in the whole five hundred acres, more or less, as per survey made by J. M. Stewart in April, 1882, the same being a part of a tract of three thousand acres, more or less, originally owned by Gen. W. R. Davie. My said right, title, interest, and claim in and to said undivided one-fifth part of said Landsford Water Power tract being only as follows: In accordance with an agreement previously made with W. R. Davie, of Chester County, S. C., I purchased and received title to the same from the sheriff of said County of Chester (who sold the same at public sale under executions against the said W. R. Davie); and I am to hold said title to the same as security for the money advanced for and due by the said W. R. Davie to me, and which said indebtedness amounts at this date to the sum of one thousand six hundred and sixty-five 06–100 dollars ($1,665.06), and upon the payment of which said sum by the said W. R. Davie, he is entitled under said agreement to receive an unencumbered title to said undivided one-fifth part of said Landsford water power tract'—which said mortgage was duly recorded in said county and State on the 22nd March, 1886. The following payments were made on said mortgage debt: November 23rd, 1886, $55; January 29th, 1887, $50.

"On the 25th day of June, 1887, under an order of the Court of Probate of Chester County, William R. Davie, the adminis-

trator of Allen J. Davie's estate, sold the right, title, and inter-
est of said Allen J. Davie in and to the bond of said William R.
Davie to said Allen J. Davie for the sum of $3,400, dated 18th
November, 1876, given for the purchase by said William R.
Davie of the 1–5 interest of said Allen J. Davie in Landsford,
secured by a mortgage of the said 1–5 interest in Landsford, exe-
cuted by said William R. Davie to said Allen J. Davie. Said
bond and mortgage were purchased at said sale by Edward Mc-
Crady, jr., for the sum of $25, and in consideration of said sum
were assigned and conveyed to the said Edward McCrady on the
1st day of August, 1887, by the deed of said William R. Davie.
The second above entitled action herein was brought to foreclose
the said mortgage and to enforce the payment of said bond, but
only to the extent of 1–3 part thereof, subject to the claim of the
building and loan association, for which it stands as security.
In the purchase and negotiations for the interest of Allen J.
Davie, it was considered that said bond and mortgage were satis-
fied between the parties, except as to the building and loan debt,
and Allen Jones and T. C. Robertson were so advised by Mr.
Edward McCrady.

"While the present action was pending, the issues herein were,
by agreement of all parties, referred to arbitration, and an award
was made by the arbitrators on the 4th day of August, 1887,
but the plaintiffs objected to the same, and it was not confirmed
by the court, because not referred under a rule of court. The
testimony taken for the purposes of said arbitration was used at
the present hearing of the case with other testimony. Subse-
quently to said award the defendants, by leave of court, filed a
supplemental answer, in which they sought to set up the award
and have it carried out, said answer being in the nature of a bill
for specific performance of contract.

"On the 26th day of March, 1885, William R. Davie, being
indebted to Jones & Robertson on account for advances made by
them to him, made and executed to them his promissory note, bear-
ing that date, in the sum of sixteen hundred and sixty-five 6–100
dollars, with interest from date until paid at the rate of ten per
centum per annum, payable December first next after date—
which note was assigned to J. B. E. Sloan & Son by said Jones

& Robertson, and is now held by them as hereinbefore stated, and is due and payable to them in accordance with said assignment as set up and claimed by said J. B. E. Sloan & Son in their answer herein.

"Mary F. Davie, since the commencement of this action, has departed this life, and her interests herein are represented by her executors, Fred. G. Fraser and Alwyn Ball. The property involved in these proceedings is not susceptible of partition in kind.

"At the trial of these cases, a motion was made in the first case for the appointment of a receiver to take charge of the real estate subject to the action, until the final determination of the matters in difference. I am satisfied, from the affidavit submitted in support of the motion, and from the pleadings and testimony herein, that this is a proper case for a receiver, for the parties do not agree among themselves as to the extent of their several interests as co-tenants, and W. R. Davie, who claims an interest, is in possession and seemingly insolvent.

"In accordance with the conclusions of fact embodied in the foregoing statement, I conclude, as matter of law, that the title to said Landsford property is vested in the parties entitled as tenants in common, as follows, to wit:

1. "Mary F. McCrady, the plaintiff, is seized of one undivided fifth part of the whole, free of encumbrance.

2. "Henrietta C. Davie, under the deed of Allen Jones to her, hereinbefore described, is seized of one undivided fifth part of the said property, excluding the water power tract of five hundred acres, more or less, as surveyed by J. M. Stewart. She is also entitled, in accordance with the trusts herein declared by Allen Jones, to one-fifth interest in the water power tract, the legal title to which is in Allen Jones.

3. "Allen Jones is seized of two undivided fifths of the whole, and also, in addition thereto, to one undivided fifth part of the water power tract.

4. "Thomas C. Robertson is seized of an undivided fifth part of the whole.

5. "The undivided fifth interest in the whole property, exclusive of the water power tract, is in Henrietta C. Davie, subject to the mortgage to Mary F. Davie hereinbefore described, recited

and found and set up in the answer of the executors of the said Mary F. Davie, Frederic G. Fraser and Alwyn Ball. The undivided fifth interest in the water power tract to which Henrietta C. Davie is entitled, is subject to the payment of the real amount due by William R. Davie upon his note of sixteen hundred and sixty-five dollars and six cents ($1,665.06), described in the mortgage to J. B. E. Sloan & Son, and set up by their answer, after a settlement of the accounts between W. R. Davie and the said Allen Jones or Jones & Robertson, and also subject to any balance that may be due Jones & Robertson by W. R. Davie.

7. "The undivided fifth interest in the whole property is in T. C. Robertson, subject to the payment of the amount due on his mortgage to J. I. Middleton & Co., to be paid to the persons now entitled to and holding said mortgage.

8. "The undivided fifth of Allen Jones in the whole property is subject to the payment of the amount due on the Middleton mortgage to the real holders and owners thereof. The undivided one-fifth interest of Allen Jones in the whole property is subject, first, to the debt due by Allen J. Davie to the Rock Hill Manufacturing and Industrial Association, to secure which it holds the bond and mortgage set out in its answer, and then to the mortgage held by Pelzer, Rodgers & Co., as set out in their answer.

"It is ordered, adjudged, and decreed, that the parties are entitled as tenants in common of the said property in the interests and proportions hereinbefore set forth, but the same being incapable of partition in kind, it is ordered and adjudged, that the said Landsford estate be sold by John C. McFadden, clerk of the court, on salesday in April next, or some convenient salesday, thereafter, after having first duly advertised the same. That the water power tract be sold separately, and the remainder of said land be sold in such parcels as may be most conducive to the interests of the parties entitled. That the said clerk shall have power to have the separate parcels of the whole tract ascertained by a survey, and for this purpose he is empowered to employ the services of one or more competent surveyors.

"That the said sale be made upon the following terms, to wit: one-third ($\frac{1}{3}$) cash, and the balance on a credit of one and two

years in equal instalments, with interest from the day of sale, to be secured by the purchaser's bond and a mortgage of the purchased premises, with leave to him to pay his entire bid in cash. That if it shall appear desirable to a majority of the parties in interest, respect being had to the amount and value of said interest, that the said sale or sales be postponed to the next autumn, and they shall signify such desire in writing to the said clerk (said writing to be attached to this decree). the said sales may be postponed accordingly, unless otherwise directed by the court.

"The proceeds of said sales to be distributed and paid out by the said clerk to the parties entitled in accordance with their respective interests hereinbefore set forth and declared, first, however, paying therefrom the cost of these proceedings and the expenses of sale. That it be referred to the said John C. McFadden, as referee, to ascertain and report the amounts due upon the several mortgages and other encumbrances on the said property as herein established, and all matters of account herein between the various parties affecting in any way the interest hereinbefore adjudged. That in order to avoid further delay, the said report and any exceptions thereto may be heard and determined at chambers, and such determination when made shall stand as a part of this judgment.

"It is ordered, that George W. Gage, Esquire, a counsellor of this court, be and is hereby appointed receiver, pending the continuance of the litigation herein. That all the rents and profits from the said real estate now due, or that have arisen since the hearing at the summer term of 1888, and that have not been divided between the parties, be paid over to the said receiver, and that from and after this date and until final settlement of all the issues in this action, the said receiver do contract for and receive all the rents and hold the same subject to the further order of this court. That before entering upon the duties of his office as receiver, the said George W. Gage do enter into an undertaking in the sum of five thousand dollars to the said clerk of the court, secured to his satisfaction, for the faithful discharge of his duties as receiver.

"It is further adjudged, that said Edward McCrady, junior, is estopped by his relations to the parties herein, and his conduct

and representations in regard to the interest of Allen J. Davie in the premises, and cannot set up the mortgage which forms the subject of the second action hereinbefore stated. And the said action is adjudged to be dismissed, and that the costs thereof be paid by the said Edward McCrady, jr., the plaintiff therein.

"J. B. KERSHAW,

"January 25th, 1890.                      Presiding Judge."

Notices were served upon the parties of the filing of this decree on 30 January, 1890, and on the 8th day of February, 1890, notices of intention to appeal from Judge Kershaw's decree by Henrietta C. Davie, William R. Davie, and Edward Mc-Crady, junior, were served. On the 4th day of March, 1890, his honor, Judge Norton, filed the following order in these causes: "It appearing that the defendants, William R. Davie and Henrietta C. Davie, have appealed from the judgment of Judge Kershaw herein, filed 27 January, 1890, directing the division and sale of the real property sought to be partitioned herein, and that the receiver appointed under said judgment has entered into the undertaking required, and has entered upon the discharge of his duties and taken charge and control of the property; now, on motion of T. W. Bacot for the said William R. Davie and Henrietta C. Davie, defendants, appellants (due notice of this motion having been served on the other side, who have not appeared), it is ordered, that the execution of the said judgment be stayed without any undertaking or security of the said defendants, appellants, or either of them."

On the 10th day of March, 1890, Henrietta C. Davie served upon the other side twenty exceptions to the decree of Judge Kershaw, William R. Davie served two exceptions, and Edward Mc-Crady, the younger, served one exception to said decree, and as these exceptions will hereafter be considered, they are not reproduced at this point, but will appear hereinafter.

On 1st March, 1890, John C. McFadden, as referee, filed his report, in obedience to the direction of Judge Kershaw's decree, accompanied by the testimony taken before him, and the defendant, William R. Davie, served his exceptions thereto. This report of the referee came on to be heard by his honor, Judge Nor-

ton, on the exceptions thereto, and on the 14 April, 1890, his decree was filed. That decree was as follows:

"Upon hearing the report of John C. McFadden, Esq., clerk of said court, made and filed in the above stated cases 1st March, 1890, and the exceptions filed thereto by William R. Davie, Edward McCrady, jr., and Henrietta C. Davie, and the argument of Thomas W. Bacot, Esq., in support of said exceptions, and the argument of C. E. Spencer, Esq., *contra*, at the regular spring term, 1890, and after due consideration, it is ordered and adjudged, that all of said exceptions be overruled, except as hereinafter provided; that the said report be confirmed as the decree of this court, except so far as the same is hereinafter modified, and that the various parties for whom this confirmation is made be forthwith allowed to enter judgments agreeably to the terms of said report. It appears from said report that at the date thereof the amounts due to the respective parties interested are as follows: To the Rock Hill Manufacturing and Industrial Association the sum of fifteen hundred and fifty-eight 28–100 (1,558.28) dollars. To Mrs. Mary F. Davie the sum of two thousand two hundred and sixty-eight 91–100 dollars ($2,268.91). To John R. London and A. E. Hutchinson the sum of ten thousand seven hundred and fifty-nine 73–100 dollars ($10,759.73). To Pelzer, Rodgers & Co. the sum of six thousand one hundred and thirty-seven 50–100 (6,187.50) dollars. On the note of W. R. Davie to Jones & Robertson, now owned by J. B. E. Sloan & Son (to which reference will be made further on), the sum of twenty-five hundred and thirty-four 17–100 (2,534.17) dollars.

"The court is of the opinion that as between the defendant, William R. Davie, and his co-defendants, Jones & Robertson, the decree of his honor, Judge Kershaw, filed 27 January, 1890, contemplated and required that the real amount of the aforesaid $1,665.06 note of William R. Davie to Jones & Robertson be ascertained by inquiry into the items of its consideration. It is therefore ordered, that said clerk do inquire and report the real amount due upon said note accordingly. But it appears that this note was placed in the hands of the said Jones & Robertson by the said William R. Davie as a basis of credit, to be used by them as security, and as it was transferred to their co-defendants,

J. B. E. Sloan & Son, to that end, and as the debt of the former to the latter then exceeded and still exceeds the amount of said collateral, this inquiry shall be without prejudice to the said J. B. E. Sloan & Son to proceed to enter their judgment herein just as if the clerk's report were confirmed in every respect, as to whom it is hereby confirmed. The clerk has reported upon all other matters of account between the said W. R. Davie and Allen Jones and Jones & Robertson, and the testimony sustains his findings. But as the result of the reference may affect said findings by reducing the $1,665.06 note and so furnishing a discount to the amount reported as due to Jones & Robertson ($999.55), it is ordered, that the said Jones & Robertson be not allowed to enter judgment for the said amount so found to be due them ($999.55), until the coming in of the clerk's report hereby ordered to be made under this decree."

Notice of the filing of this decree was served upon the parties on the 28th April, 1890, and on the 1st May, 1890, notice of intention to appeal from Judge Norton's decree was served by William R. Davie, and on the 28th May, 1890, he served two exceptions thereto. As the same will be taken up hereafter, they will be reproduced then.

On the 18th June, 1890, John C. McFadden, as referee, filed his report, as required by Judge Norton's decree, together with the testimony taken by him. By such report he finds that W. R. Davie is due Jones & Robertson on the $1,665.06 note, $1,493.68, and inasmuch as the interest on this amount up to the date of his first report would make the true sum due on the $1,665.06 at that time $2,273.33, instead of $2,534.17—a difference of $260.84—this difference must be credited upon the $999.55 due by W. R. Davie to Jones & Robertson, as the note for $2,534.17 (where the credit belongs) has passed from Jones & Robertson to Sloan & Son: To this report William R. Davie duly excepted, and such report and exceptions came on to be heard by Judge W. H. Wallace, who made the following decree:

"This matter is before me upon the exceptions of W. R. Davie to the second report of John C. McFadden, Esq., special referee, filed June 18th, 1890. The first exception is overruled. I am of the opinion that the burden of proof was upon W. R. Davie

to show errors in the items which went to make up the note. But even if it was upon Jones & Robertson, the same as if the note had never existed, the account has been properly established so far as it has been allowed by the referee. The books of original entry were destroyed, and that admitted of secondary proof, and whilst it is true that if such proof or evidence from the other side shows that some of the items charged were 'drafts' or 'orders,' further proof should be offered to establish them, yet the exceptions do not point out any such items. But W. R. Davie at the reference did point out certain objectionable items, and ordinarily the presumption would be that he had no other objections to urge. His counsel contends that this was done to facilitate the reference, and that it was intended to be a waiver as to the other items. Granted; but that does not relieve him of the necessity of pointing by exception which of these other items he objects to as unproved.

"The second exception is overruled. I am satisfied from the letter of the referee, exhibited to me, and here directed to be filed, that Mr. Jones explained the two items here complained of to the referee's satisfaction. The third exception is also overruled. I cannot say that the amount of the items excepted to is fixed contrary to the evidence. It is ordered, that the said report stand confirmed in all respects as the decree of this court."

We have thus outlined the legal history of these causes, to the end that the many exceptions may be appreciated and intelligibly passed upon. Upon reflection, we have concluded to consider the questions presented for our decision in the following order: *First*. Respondents' motion to dismiss the appeals. *Second*. The appeal from Judge Witherspoon's order allowing defendants to file supplemental answers. *Third*. The appeal from the decree of Judge Kershaw. *Fourth*. The appeal from Judge Norton's decree. *Fifth*. The appeal from Judge Wallace's decree.

FIRST. The respondents seek the dismissal of all the appeals here, except that taken from the decree of Judge Wallace of 5 July, 1890, upon the following grounds:

1. As to the order of Judge Witherspoon, filed 27th February, 1888: because, after the service of the notice of appeal therefrom

on 2 March, 1888, by Mary F. McCrady, Henrietta C. Davie, and the executors of Mary F. Davie, no further action was taken to perfect the said appeal until August 13, 1890, when a general notice of appeal from all the decrees herein was served in the names of all the appellants herein, and along with it certain exceptions to all the decrees herein and appellants' proposed "Case;" notwithstanding the fact that the following decrees that were final, and especially as against said order, had been filed in said causes, and notices of the filing of each of which had been duly served upon appellants more than forty days prior to the said 13th August, 1890, to wit: Judge Kershaw's decree, filed January 27th, 1890; Judge Norton's decree, filed April 14th, 1890.

2. As to the decree of Judge Kershaw: because it was final as to the second action (Edward McCrady, plaintiff, *v.* William R. Davie *et al.*) entitled as above. And because it was final as to every issue arising in the first action entitled above (Mary F. McCrady *v.* Allen Jones *et al.*), except the indebtedness of the said W. R. Davie to the respondents, Jones & Robertson, and yet after the notice of appeal therefrom, served on the 8th day of February, 1890, by the said Henrietta C. Davie, W. R. Davie, and Edward McCrady, jr., and after the serving of their exceptions thereto on the 10th March, 1890, no further action was taken to perfect said appeal until August 13, 1890, when the general notice of appeal was served as aforesaid, and along with it certain exceptions as aforesaid and appellants' proposed "Case" as aforesaid.

3. As to the said decree of Judge Norton: because it was final as to every issue involved in the first action entitled as above (Mary F. McCrady *v.* Allen Jones *et al.*), except the question of the said W. R. Davie's indebtedness to the said Jones & Robertson, as to which question it was final so far as all the parties herein were concerned, except as between the said W. R. Davie and the said Jones & Robertson, in which respect it was left open, and especially was it final as to the respondents, J. B. E. Sloan & Son; yet after the notice of appeal therefrom, served on the 28 April, 1890, by the said W. R. Davie, and after serving his exceptions thereto on the 1st May, 1890, no further action was taken to perfect said appeal until August 13, 1890, when the

general notice of appeal was served as aforesaid, and along with
it certain exceptions as aforesaid and appellants' proposed "Case"·
as aforesaid.

We must overrule the first ground of the motion to dismiss
these appeals. ·It will be remembered that the order of Judge
Witherspoon referred to here, was that wherein leave was
granted to certain defendants in the case of Mary F. Mc-
Crady v. Allen Jones et al. to file supplemental answers.
Due notice of appeal from this order was given by appellants,
but any further steps in perfecting their said appeal was rendered
unnecessary by the *consent order* of Judge Witherspoon, passed
on the 27 March, 1888, wherein it is expressly provided, "That
these orders and subsequent proceedings be taken without preju-
dice to the appeal from the order allowing the supplemental an-
swers to be filed, *notice of which has been duly given, and which
will stand to be heard when the case reaches the Supreme Court
on its merits.*" This is the first time this case has reached this
court, and being heard on its merits, the foregoing consent order
entitles the appellants to be heard.

As to second ground to dismiss the appeals, after a careful
consideration of its scope and the important consequences to liti-
gants in this court, we are prepared to overrule this ob-
jection also. The·question presented here is not free from
embarrassment in ordinary actions at law or in equity. It
is highly important to keep the rules governing the matter of
appeals to this court as free from doubt as possible; it is very
important to the protection of the rights of persons and property
that this should be so. And this court would view any other
result in no other light than as a public calamity. Appeals are
provided not only from final judgments, decrees, and orders, but
also from intermediate judgments, decrees, and orders. Respond-
ents admit this to be the law, but they seek to restrict an appeal
from an intermediate judgment, decree, or order where notice of
the filing of the same is served upon the opposite or appealing
party, to those cases where a notice of appeal is served within ten
days after such notice of judgment, decree, or order, and then
within thirty days after such notice of appeal is given, the appel-
lant shall serve his exceptions and proposed "Case." This is not

and should not be the law.   To require, in a sharply contested equity cause, brimful of issues of moment to parties, that every intermediate order, that it is conceived affects injuriously the rights of some one or more of the parties to the cause, should be appealed from by such party within ten days after the same is filed, who must thereafter, within 30 days, prepare exceptions and a proposed "Case," and that upon a failure to do this, such intermediate order cannot be inquired into, would be a perversion of justice.

Fortunately, this court has already in several cases passed upon this question.   In *Hyatt* v. *McBurney*, 17 S. C., 150, this court said: "Now, one of the incidents which belongs to an appeal from a final judgment is the power which is conferred on this court by the *proviso* to section 11 of the Code to review on such appeal any intermediate decree or matter which may have led to or affected such judgment.   This review, as it will be observed in reading the *proviso*, is not a right conferred upon the parties, so much as it is a power given to this court, and it is a very important and necessary power.   Without it, appeals would be multiplied, causes delayed, and this court, being unable to look into the very matters which may have caused errors in the final judgment, rendered powerless to correct them.   The decree of Judge Kershaw is a final decree of the Circuit Court.   Mrs. Carson has complied with the act of 1878, by giving notices within ten days of her intent to appeal, and by the preparation of the other papers required by that act.   This brings the appeal properly before this court.   When here, though she did not appeal from the intermediate decree of Judge Pressley, yet if it has affected the final judgment of Judge Kershaw, under the *proviso* of section 11, we have the power to review it."   So, too, in *Lee* v. *Fowler*, 19 S. C., 607, where Judge Fraser rendered the intermediate decree to which no notice of appeal was given, yet when Judge Cothran rendered a final judgment, from which an appeal was taken, and in which appeal an exception was made to Judge Fraser's intermediate decree, and the respondent in this court sought to deny the appellant the right to question the intermediate decree, the court promptly said: "It would have been more in accordance with safe practice if the defendant had at

least excepted to the decree of Judge Fraser, which set aside the first report and recommitted the case; but we will consider the appeal from the order of Judge Cothran as giving this court the power to review the decree of Judge Fraser as one intermediate and affecting the final order."

Also, in *Thatcher & Co.* v. *Massey*, 20 S. C., 547, this court held: "The respondent denies the right of appellant to have the decree of Judge Pressley reviewed as an intermediate decree, no notice of appeal or exceptions having been filed or given thereto until after the final decree of Judge Hudson. While it would be better practice, for obvious reasons, that exceptions should be filed to the intermediate decree, in view of a possible appeal from the final decree, when, in such event, it would be proper to have the intermediate decree reviewed, yet under the cases of *Hyatt* v. *McBurney*, 17 S. C., 143, and *Lee* v. *Fowler*, 19 S. C., 607, the omission to file such exceptions is not a legal error." In the case of *Sullivan* v. *Latimer*, 32 S. C., 284, it seems that Judge Pressley had made an intermediate order, to which the appellant had excepted for the purpose of reviewing such order in this court, Judges Norton and Wallace also made intermediate orders, to which similar exceptions were taken, and Judge Hudson having made an intermediate order, the appellants in that case sought on an appeal from Judge Hudson's order, not only to review here the last named, but also those of Judges Pressley, Wallace, and Norton, but this court declined to pass upon any other than the exception to Judge Hudson, holding that the exceptions to the other orders must await an appeal from the final decree. In *McAfee* v. *McAfee*, 28 S. C., 192, Mr. Justice McIver uses this very significant language: "It will be observed that in fact there has not yet been any final judgment rendered in the case, but as no question has been raised either in the record or in the argument here in respect to this, we will not volunteer to do so, inasmuch as, under the view which we take of the case, much unnecessary and troublesome inquiry will be avoided."

To so much of this second ground, to dismiss the appeals here, as relates to Edward McCrady as plaintiff and appellant in the case of Edward McCrady v. William R. Davie and others, under Judge Kershaw's decree, it will be sufficient to

say that by the *consent order* of Judge Witherspoon, made on 27th March, 1888, this case was *consolidated* with the case of Mary F. McCrady *v.* Allen Jones, and that being so, that appellant and all the other parties are obliged to treat the two cases as one. The consolidation was the act of all, and no one can repudiate it.

It remains for us to consider the third ground for dismissing the appeals. We are not able to see any merit here, and must overrule it. Judge Kershaw, in his decree, finding it necessary to the settlement of the rights of the parties before him, ordered a reference to the clerk of the court of Chester, Mr. McFadden, of certain indebtedness amongst the parties defendant of a complicated character. The report upon those matters was heard by Judge Norton, who sustained the report in the main, but ordered some of them to be inquired of by the same referee. This decision of Judge Norton was in no sense a final judgment. It did not pretend to be such; it was but an intermediate decree. And such being the case, although excepted to, as we have previously held in this case, such exceptions had to await the final judgment for a hearing in this court.

The respondents, in the event of the failure of their motion to dismiss the appeals, move before this court to have stricken from the "Case" each and every exception that appears as an addition to the exceptions which the several appellants had made and taken previously thereto, and within thirty days from notice of the filing of the several decrees to which they were respectively directed—that is to say: 1. All the exceptions of the said Henrietta C. Davie to the aforesaid decree of his honor, Judge Norton. 2. All the exceptions of the said William R. Davie to the aforesaid decree of his honor, Judge Kershaw, which are made upon the grounds stated in the exceptions thereto by the said Henrietta C. Davie, and served by her on March 10, 1890. 3. All of the exceptions of the said Edward McCrady, jr., to the aforesaid decree of his honor, Judge Kershaw, which are made upon the grounds stated in the 5th, 6th, 7th, 8th, 9th, 14th, and 20th exceptions thereto by the said Henrietta C. Davie, as aforesaid. 4. All the exceptions of Mary F. McCrady to the aforesaid decree of his honor, Judge Kershaw. 5. All the

exceptions of all the appellants to the aforesaid order of his honor, Judge Witherspoon.

We refuse this motion in all particulars. By this effort the respondents seek to restrict the appellants to the use in this court of only those exceptions that were taken within forty days immediately succeeding notice of the filing of the decrees referred to. The cases already cited, *Hyatt* v. *McBurney* (17 S. C., 150), *supra*, and others, distinctly hold, that while it is the better practice to except to the intermediate decrees at the time of their filing, yet upon failure to do so then, and taking such exceptions to such intermediate decrees or orders within the time fixed by law after the final decree in the cause, will be sufficient to enable this court to pass upon the same.

Second. *The appeal from Judge Witherspoon's order*, filed 27 February, 1888. The following are the grounds of appeal: *a.* Because his honor erred in holding that the granting of the motion of the defendants, Sloan & Son and Allen Jones, for leave to file the supplemental answers proposed by them would not in effect be reversing Judge Wallace's order. *b.* Because his honor erred in holding that there had been no such "step in the progress of the cause, after the occurrence of the matters sought to be pleaded, as would preclude the defendants, Sloan & Son and Allen Jones, from entering the plea contained in their supplemental answers." *c.* Because his honor erred in granting "the motion of the defendants, Sloan & Son and Allen Jones, for leave to file their respective supplemental answers." *d.* Because his honor, Judge Witherspoon, erred in allowing the supplemental answers of the said defendants, Sloan & Son and Allen Jones, as proposed to be filed, the said supplemental answers actually seeking to interpolate matters wholly between the said William R. Davie and Allen Jones, or rather Jones & Robertson, and entirely foreign to the cause of action and the issues in the said action for partition, and seeking to require the said William R. Davie to plead to the allegations of said supplemental answers, although neither the said William R. Davie nor the said Jones & Robertson were parties to the said action, and the said William R. Davie had no interest or estate, and disclaimed having any, in the

lands which were the subject of the said action. (William R. Davie joins in the last exception.)

The plaintiff's complaint set up the rights of Mrs. McCrady in the Landsford plantation, but it did not stop there, for it with great circumstantiality alleged the interests of each defendant therein, as well as the methods by which the same were acquired by the defendants. It had sixteen paragraphs. Allen Jones, and those who claimed rights in the Landsford property through him, admitted the paragraphs of the complaint, except the 7th, 8th, 14th, and 16th, which related by their allegations to the original fifth interest in the Landsford plantation that had been owned by William R. Davie prior to the 5th February, 1881, at which date it was purchased at sheriff's sale by Allen Jones, who received a deed therefor, and also the original fifth interest of Allen J. Davie prior to the 5th February, 1881, at which date it was purchased by Allen Jones at sheriff's sale, and a deed was made to him therefor. The plaintiff insisted that Mrs. Henrietta C. Davie was entitled to 4–15, Allen Jones to 4–15, Thomas C. Robertson to 4–15, and she to 3–15. It is due to all the parties to this controversy (and it was eminently proper in the plaintiff, such being her conception of the rights of her co-tenants) to state that such allegations in her complaint were the beginning of this controversy. The answers of the defendants that related to these disputed paragraphs of the complaint were at variance with the alleged rights, in part at least, of Mrs. Henrietta C. Davie.

To avoid this business complication of friends and relatives, an arbitration was agreed upon by all parties. When the award was made, it being favorable to Allen Jones and Thomas C. Robertson on the matters in dispute, and when it was proposed in open court to make it the decree of the court in the case, as the instrument signed by all the parties to the controversy seemed to require, the award was assailed as being beyond the submission of the parties; and while this question was argued before Judge Wallace, the new objection was sprung, that the cause being pending in court, and no rule having been taken therein for such submission to arbitration, under a decision of the court of last resort in this State, such award could not be made the judgment of the

court.  A motion was made by plaintiff at such hearing for refer-
ence to take testimony.  Judge Wallace refused to confirm the
award, and granted an order to take testimony in the cause.
This order was made at the first term of the court held in Chester
County after the award had been made.  The two questions just
indicated were all that was before Judge Wallace.

After his decision, a motion was made before Judge Wither-
spoon, the resident judge of the 6th Circuit, of which Chester
County is a component part, for leave to file supplemental an-
swers setting up the award.  Such motion was granted by Judge
Witherspoon so far as Sloan & Son and Allen Jones were con-
cerned, but denied as to Thomas C. Robertson.  In the order
granting the motion, Judge Witherspoon refers, though not in
terms, to the 188th section of the Code of Procedure of this State
as the basis of his action, but at the same time he seems to have
had presented to him, as difficulties in the way of granting the
motion, the likelihood that such motion might be said to interfere
with the order made by Judge Wallace, which had been acquiesced
in by all the parties to the action, and, also, some views as to the
propriety of the motion, derived from the equity practice, that
obtained in such matters, viz., that there had been a continuance
of the cause on the calendar after the date of the award—that
there had been a step of progress in the cause after the order was
made refusing to confirm the award by granting an order of refer-
ence.  He decided these points adversely to the plaintiff and the
defendant, Mrs. Henrietta C. Davie.  Now, the appeal here pre-
sents these objections to Judge Witherspoon's order, with the
additional one of a practical character, viz., that such supple-
mental orders interpolated "matters wholly between William R.
Davie and Allen Jones, or rather Jones & Robertson, and entire-
ly foreign to the cause of action," &c.

This last objection, if it were sustained, it seems to us, would
deny the Court of Equity the right to pass upon the equities of co-
defendants.  This court has repeatedly held that it is entirely com-
petent to so pass upon the conflicting claims of co defendants.
Especially will this be the case when the plaintiff, as in this case,
has, by allegations in her complaint, brought about this assertion
of conflicting claims amongst the co-defendants.  That the an-

swer made allegations rendering it proper that William R. Davie should be made a party to the action, is one of the offices of the answer; it is the right, as well as the duty, of a defendant in his answer to set up all the allegations of fact necessary to a complete determination of the rights of the parties in the common subject-matter. Here, all the defendants who answered, except Mrs. Henrietta C. Davie, claimed by their allegations of fact, that William R. Davie had an interest in the Landsford plantation, and it was no error on the part of the defendants to use their best endeavors to force him into the fight; he was one of the factors in all the arrangements made and contemplated touching this Landsford property, so far as Allen Jones and Thomas C. Robertson were concerned, and therefore exception "*d*" is overruled.

Now, as to the interference with Judge Wallace's order, as indicated in exception "*a*." We fail to perceive its force here. All that Judge Wallace did in his order, so far as the award was concerned, was in refusing to give it the sanction of a judgment of the court. That Judge Witherspoon allowed by his order the defendants to set up the award by way of a supplemental answer, was simply allowing it to appear in the pleadings as an issuable fact. No judge, by allowing an amendment to a pleading, pretends to give such amendment any other force than attaches to other allegations of fact originally pleaded, no more no less. This objection must be overruled.

Exceptions "*b*" and "*c*" will be considered together. In the quotation of the appellants from Daniell's Chancery Pleading and Practice, page 914, that author says: "Although the court will, in cases of mistake or other cases of that description, permit a defendant to correct his answer by a supplemental answer, it always does so with great difficulty, when an addition is to be put upon the record prejudicial to the plaintiff." Now, here we have an admission by the appellant, that a Court of Chancery, "in cases of mistake or other cases of that description," will permit such amendment to the defendant's pleading, yet he lays great stress upon the other words: "It always does so with great difficulty when an addition is to be put upon the record prejudicial to the plaintiff." We think in this case the plaintiff, by the frame-work of her complaint, invited

this controversy. She certainly assisted in preventing the acceptance of the award, and to do which she had a perfect right; only now that ill consequences and delay have resulted, she must not complain. In considering the recognition of the right of these defendants to file supplemental answers under the leave of court first obtained, we should not lose sight of the fact, that the Circuit Judge has determined that this was a proper case for the exercise of his discretion.

But over and above all the rules of equity on this subject, we are impressed with the fact, that it is a fixed rule of law by statute in this State, that on motion a Circuit Judge may grant leave to a defendant to file a supplemental answer in two sets of cases, one where facts have occurred since his first pleading was prepared, of which he was ignorant at the time of his first; the other, when a judgment or decree of any court of competent jurisdiction, has been rendered since the commencement of such action, determining the matters in controversy in said action or any part thereof. Section 198 of the Code of Procedure. No one will or does contend that this award was a judgment or decree of any court of competent jurisdiction. It must be pleaded as a fact occurring after the first pleading. These are our views on this matter, and we regret that a pressure of official work will not enable us to devote more time to the development of this branch of the case. These exceptions are overruled.

THIRD. *The appeal from the decree of Judge Kershaw.* The grounds are numerous, but are important in character.

1. Because Judge Kershaw erred in not sustaining the demurrers interposed by Mary F. McCrady to the supplemental answers of Sloan & Son and Allen Jones.

2. To the following finding: "W. R. Davie found himself unable to pay for the interests of his co-tenants in Landsford, which he had purchased, and in 1879 the parties agreed with him to rescind the same. Accordingly, in 1880 releases from W. R. Davie to John M. Davie and Mary F. Woolf were duly executed, and dated 31st March, 1879."

3. To the following finding: "Allen J. Davie resided in Texas, but after these releases had been executed, he returned to this State and resided at Landsford with W. R. Davie, farming and

enjoying an interest in a mill thereon until November, 1880, when he bargained his interest in Landsford to Allen Jones for the sum of one thousand dollars in cash, and the assumption by said Jones of his debt to the building and loan association, or the Rock Hill Manufacturing and Industrial Association, as more accurately called. * * * The bargain was complete, and noth- ing remained to be done but the payment of the money and the execution of the title deed, when Allen J. Davie suddenly died on 18th day of November, 1880. These negotiations were made known to W. R. Davie, and no notice was given to Allen Jones that the legal title was not in Allen J. Davie."

4. To the following finding: "The tenants of the land residing in this State were all anxious of acquiring the interest of Allen J. Davie and retaining it to some one or more of them in order that they might have the control of it without the intervention of a stranger. There was upon the place a most valuable water power, which they desired and hoped to have developed by capi- talists seeking investments of that character, and from which they expected most valuable results, and the control of the property amongst themselves, acting harmoniously as relatives and friends, would promote what they regarded as common interest of all. They were then actuated by a desire to relieve William R. Davie from his embarrassments, and secure to him the enjoyment of his share of the estate upon which he resided. Accordingly, Thomas C. Robertson purchased the undivided fifth part of Landsford from John M. Davie, and the same was duly conveyed to him by deed bearing date the 18th day of December, 1880, which was duly recorded. And on the 15th day of December, 1880, Allen Jones purchased and had conveyed to him by proper deed the undivided interest of one-fifth part of said lands of Mary F. Woolf, which deed was duly recorded. And subsequently, on the 3rd day of February, 1881, Allen Jones and Thomas C. Robertson acquired the interests of Mary F. Woolf and John M. Davie, as heirs at law of Allen J. Davie, in said lands, by their deed of that date duly executed and for valuable consideration, which was also duly entered of record."

5. To the following finding: "After the death of A. J. Davie, it was ascertained that there was no release from William R. Da-

vie, and the parties interested were much concerned about the best method of securing the legal title to his share in the estate. After consulting with Gen. McCrady, and considering whether it was best to foreclose the mortgage of the Rock Hill M. & I. Association, Allen Jones assumed and guaranteed the payment of their claim, and with Thomas C. Robertson purchased and obtained control of the judgments against Allen J. Davie and William R. Davie, and the interests of the said W. R. Davie and A. J. Davie were sold under the executions against them and bought in by Allen Jones with the knowledge and approval of all the parties, Gen. McCrady being present advising and co-operating with him at the sale.".

6. To the following finding: "Gen. McCrady, as has been said, was present at the sale to Jones by the sheriff, and was advising and co-operating with him. In these proceedings he was confided in as the friend and legal adviser of Allen Jones and Thomas C. Robertson."

7. To the following finding: "Allen Jones and Thomas C. Robertson either assumed the payment of money or advanced it for the purpose of paying for or procuring the control of the judgments necessary to enable them to satisfy the bids upon the land; but afterwards Gen. McCrady negotiated a loan from Pelzer, Rodgers & Co. for two thousand dollars, and sent seventeen hundred and ninety-five dollars and fifty cents to Allen Jones to relieve him in regard to the amount he had paid out in the aforesaid purchases, and claims to have properly accounted to him for the remainder of said loan."

8. To the following finding: "Whereupon Allen Jones, with the approval of Gen. McCrady, conveyed to Henrietta C. Davie, wife of W. R. Davie, one undivided fifth part of said Landsford plantation, saving and excepting therefrom five hundred acres, &c."

9. To the following finding: "For this, to wit, the Davison mortgage, Allen Jones paid five hundred and fifty dollars."

10. To the following finding: "In the. purchase and negotiations for the interest of Allen J. Davie, it was considered that said bond and mortgage was satisfied between the parties, except

as to the building and loan debt, and Allen Jones and Thomas C. Robertson were so advised by Mr. Edward McCrady."

11. To the following finding: "That the note of William R. Davie to Jones & Robertson for $1,665.06, assigned to J. B. E. Sloan & Son by Jones & Robertson, is due and payable to them, in accordance with said assignment, as set up and claimed by said J. B. E. Sloan & Son in their answer herein."

12. To the following finding: "The undivided fifth interest in the water power tract to which Henrietta C. Davie is entitled, is subject to the payment of the real amount due by William R. Davie."

13. To the following finding: "The property involved in these proceedings is not susceptible of partition in kind," and because his honor therefore ordered "that the water power tract be sold separately, and the remainder of said land be sold in such parcels as may be most conducive to the interest of the parties entitled thereto," and "that said clerk shall have power to have the separate parcels of the whole tract ascertained by a survey," &c.

14. To the following finding: "That this is a proper case for a receiver," and that "William R. Davie, who claims an interest, is in possession and seemingly insolvent," and because his honor appointed a receiver.

15. Because his honor adjudged as follows: "It is further adjudged, that said Edward McCrady, jr., is estopped by his relations to the parties herein, and his conduct and representations in regard to the interest of Allen J. Davie in the premises, and cannot set up the mortgage which forms the subject of the second action hereinbefore stated. And the said action is hereby dismissed, and that the costs thereof be paid by the said Edward McCrady, jr., the plaintiff therein."

16. Because his honor "ordered and adjudged, that the said Landsford estate be sold by John C. McFadden, clerk of the court."

17. Because his honor sustained the mortgage set up by Pelzer, Rodgers & Co. as a lien on the property, or any part thereof; because he sustained the assignment, or so called mortgage, set up by J. B. E. Sloan & Son, as a lien on the property or any part thereof.

18. Because his honor did not find that Henrietta C. Davie is entitled to Allen J. Davie's original one-fifth (1–5) in the whole property, inclusive of the water power tract, the legal title to which said one fifth is in Allen Jones, as his honor finds.

19. Because his honor did not find that William R. Davie has no interest or estate, legal or equitable, in the property.

20. Because his honor did not order a writ of partition to issue at least to the agricultural lands.

21. Because the decision of the Court was not filed with the clerk within sixty days after the term at which the said trial took place.

22. Because his honor erred in decreeing between this defendant and his co-defendants, Jones & Robertson, and in referring it "to John C. McFadden, as referee, to ascertain and report the amounts due upon the several mortgages and other encumbrances on the said property as herein established, and all matters of account herein between the various parties affecting in any way the interests hereinbefore adjudged."

We will now consider these grounds of appeal in their order:

1. When the defendants, Allen Jones and Sloan & Son, served their respective supplemental answers setting up the award of Messrs. Shand and Spencer in the arbitration proceedings, Mrs. McCrady demurred thereto on five grounds: "*a*. That the award is not in conformity with the terms of the submission, as set forth in the answer. *b*. That the award is indefinite and uncertain in that it awards that Henrietta C. Davie is seized and possessed of one undivided fifth of said property, not including the water power tract of 500 acres, more or less, as per Stewart's survey of April, 1882, no such survey being made a part of said award; and in that it directs the water power tract and the remainder of the land to be sold separately without any partition, division, or description of the said water power tract by the said award. *c*. That it does not appear by the said award that the said C. E. Spencer and R. W. Shand did allot, partition, and divide the plantation in kind among and to the respective parties in interest, or award to sell the said plantation as a whole, according to law and the practice of the Court of Common Pleas in such cases, as provided in the terms of the submission. *d*. That the award

is not final and conclusive, and is, therefore, void." And "*e.* That there is clear, patent, and manifest error, both of law and fact, appearing upon the face of the award."

It will be readily seen, when these several objections to the award are considered, that the demurrer is aimed to prevent it from being considered in the nature of a judgment as to, or at least a binding conclusion of, the rights of the parties to the submission; and in case such effort had been made of the award, these objections raised by the demurrer would have been entitled to consideration. For clearly if the award sought to pass upon and determine the rights of persons by no means parties to the submission, or if it had attempted to settle rights of the parties to the submission not included in the instrument creating and defining the powers of the arbitrators, or in case there was a failure in the award to make a final settlement of all the differences between the parties to the submission—in any of such instances, the demurrer would have been entitled, as we before remarked, to great consideration. But when the answers by supplement are viewed as presenting the facts connected with the award for the guidance and information of the court, these difficulties vanish. This last result seems to have been attained. Nowhere do we discover any force and effect being given to the award as a final settlement of the matters embraced in it. All the testimony given before the arbitrators and much additional testimony was presented before the referee and the Circuit Judges who successively heard the cause in its different phases. We must therefore overrule this ground of appeal.

2. This is a pure finding of fact, and under the well recognized rule of this court in such cases, if such finding is not without testimony to support it, or is not against the manifest weight of the testimony, we would not interfere. In order to do full justice to these parties litigant, very great care, involving weeks of labor, has been freely given by us to this cause, and after a careful investigation we are obliged to say that this finding of the Circuit Judge is approved by us. There is no testimony in the case that contradicts such facts; it is supported by the papers themselves. Accordingly we overrule this ground of appeal.

3. This is also a finding of fact by the Circuit Judge, sustained by the testimony set up in the "Case," and therefore the ground of appeal relating thereto is dismissed.

4. This ground of appeal embraces several findings of fact by the Circuit Judge, and might be criticised for comprehending so many particulars in one exception. But we are not disposed in this case to be critical, especially in view of the extent of the "Case," covering in itself and the arguments based thereon, nearly four hundred printed pages. We are obliged to dismiss this ground of appeal. The testimony is conclusive to our minds that the findings here considered were abundantly supported by the testimony. The "circular" issued early in 1881 is signed by Allen Jones, Thomas C. Robertson, William R. Davie, and Edward McCrady, jr., representing "the Landsford Falls (29 feet in 2,000 yards) as one of the best water power and manufacturing sites in the State," making five propositions to investors. Edward McCrady, jr., by his letters at this time shows that he is exerting himself in this direction by trying to enlist the leading newspapers of the State to further the enterprise. At his invitation, Dr. Robertson visited Charleston for the purpose of procuring an interest to be taken by the moneyed men of that city, and when Dr. Robertson was becoming disappointed, it was the warm heart of Gen. McCrady that sought to stimulate him afresh. In one of his letters to Dr. Robertson at this time, he urges him not to abandon his trip to New York city in this interest. He sent him letters from prominent Charlestonians to further the work in New York city. Then, too, a survey was certainly made of the lands set apart for this enterprise, 536 acres on the canal and Catawba River. This was done by Dr. Robertson and Col. Davie. James M. Stewart was the surveyor. On April 23rd, 1881, William R. Davie writes to Jones & Robertson: "Enclosed you will find the land plats. I notice the canal is not located in the map below the mill, but that really makes no difference. *Stewart can lay it off just the same, having the direction and the distance to the river,*" &c.

In Gen. McCrady's letter of 6 June, 1881, to Dr. T. C. Robertson, he writes: "I was sorry to receive your discouraging letter this morning, but hope you are a little too blue in the matter.

* * * Next, and more especially, I write to beg you not to give up the trip to the North. Let us give up, if necessary, all the profits (our interest) to the development of the water power. The trip will not cost more than $300, and surely we can expect to get that out of the rents between us all. I hope that by the time you receive this your hopes will have revived somewhat and that you will not be so blue, but *don't let us miss the chance of getting the water power on the market this summer.* The secretary of the treasury expects to put $75,000,000 on the market in July, and we will not have another so good an opportunity again directly. *Tell Allen I think W. R. D. had better give the $100 for the Texas judgment"* (italics ours). It was in a letter of *June 21, 1881,* that Gen. McCrady wrote to Dr. Robertson "that it was no use trying to do anything in Charleston just now. Everybody here is already embarked in their own schemes. *I have tried several, but without success"* (italics ours). *On the 25 July, 1881,* Gen. McCrady wrote to Dr. Robertson: "I think I will be in New York about 15th September. * * * Can you meet me then *to try what we can do about the water power"* (italics ours). But it is impossible almost to reproduce all the proofs bearing on this matter. So the proofs might be recited, going to show the anxiety of all the parties to assist W. R. Davie, so that his interest in the property should not pass away from him, because of his creditors having sued their claims to judgment and having the same sold under such judgments.

5. We must sustain this finding of the Circuit Judge. As before remarked, this court has applied itself assiduously to the details of these transactions as they appear by the testimony set out in the "Case," and we are constrained to say after this investigation, the findings of the Circuit Judge embodied in this exception are supported by the testimony. This ground of appeal is dismissed.

6. This is a finding of fact by the Circuit Judge, and we see in the "Case" grounds for this conclusion. Of course, it is well understood that Gen. McCrady regarded himself as more especially charged with the protection and promotion of the interests of William R. Davie, still no one can rise from a careful study of this testimony without feeling that Allen

Jones and Thomas C. Robertson were guided by the counsel of Gen. McCrady in these matters connected with the A. J. Davie interest. The letters in the "Case" show this. The presence of the parties in consultation show this. The papers executed about this time show this. That Gen. McCrady declined compensation is of no moment. He accepted a part of his travelling expenses from these gentlemen. It might seem that the great assistance rendered in affording relief to Col. Davie in his misfortunes by these gentlemen, together with their association with Gen. McCrady in an enterprise of financial moment, caused Gen. McCrady to decline compensation when it was offered. This ground of appeal is dismissed.

7. This is a finding of fact with which we are satisfied, but we deem it necessary to add a word or two of explanation touching the concluding words, which refer to the $2,000 loan negotiated through General McCrady of Pelzer, Rogers & Co., and of which sum $1,795.50 was sent by Gen. McCrady to Allen Jones. Judge Kershaw in his decree says: "And (he) claims to have properly accounted to him (Allen Jones) for the remainder of said loan." A conclusion at variance with the Circuit Judge's meaning has been drawn by appellant. Of course, the words are susceptible of such construction by the appellants. The facts in the case clearly show that General McCrady accounted at the time he sent the money to Allen Jones for every dollar of this $2,000, and that it was so understood by the parties at that time. To show this, we have but to reproduce in this connection the letters of the parties written at the time, and the account of this money as it appears on the books of Jones & Robertson, made up at that time. Allen Jones in his letter to Edward McCrady, dated *22 February, 1881*, says : "Dear Col.: I enclose bond and mortgage of Mrs. Davie, also note @ 12 months, $2,174.50, *pcds. of which you can return to us, less the $200  W. R. Davie owes you.  We would prefer New York exchange at par.*" This is Gen. McCrady's answer to that letter on that point, dated *5 March, 1881 :* "My dear Allen : I enclose a check on N. Y. for $1,795.50, payable to the order of Jones & Robertson, as per this statement :

"Loan obtained from Mr. Pelzer on our joint note,    $2,000 00
"Less $200 directed to be deducted for rent
  due M. F. McCrady,                              $200
"Discount on draft,                                    4 50    204 50

                                          "$1,795 50"

Thus it is manifest that this $2,000 was fully, finally, and satisfactorily adjusted without any delay, according to the wishes of the parties entitled to the same.    As we before said, this is what Judge Kershaw evidently meant.    This ground of appeal is dismissed.

8. This is a finding of fact by the Circuit Judge, and is fully sustained by the proofs, and was acquiesced in by all the parties at the time, to wit, early in 1881.   The appeal must be dismissed.

9. This is also a finding of fact by the Circuit Judge, and is sustained by the proofs.    The appeal is dismissed.

10. This is also a finding of fact by the Circuit Judge, and is sustained by the testimony of some of the witnesses, and under the rule adopted by this court, as hereinbefore indicated, this court will not disturb the finding.    The appeal here is dismissed.

11. This is a finding of fact by the Circuit Judge, and is supported by the testimony.    The appeal must be dismissed.

12. This finding of the Circuit Judge is dependent somewhat upon this condition of things :    Allen Jones, Thomas C. Robertson, William R. Davie, and Edward McCrady, jr., when arranging for the sale of William R. Davie's interest in the Landsford plantation, had two objects before them—first, to help William R. Davie ; and, secondly, to prevent any interference with their plans for developing the water power located thereon.    Hence in the deed from Allen Jones to Henrietta C. Davie of 1–5 interest in the Landsford property, the water power tract was excepted, Jones still holding the title.    In his letter to Edward McCrady, jr., on *25 May, 1881:* "In connection with this property, I want it to be well understood that I am holding 1–5 the interest in 500 acres mill tract in my name, but it really belongs to Col. Davie, and I am ready to transfer it as you di-

rect." Col. Davie signed the circular, holding himself out to the public as one of the controlling owners thereof. Therefore. if he, with a full knowledge that Allen Jones held this 1–5 interest in the water power tract of 500 acres, was responsible for any sum as the purchase money thereof or contracted a debt with Jones afterwards, equity would not decree a specific performance at his instance against Allen Jones until he paid him what he, W. R. Davie, owed him. With this view of the law, if the facts proved here show that this note for $1,665.06 was W. R. Davie's debt to Allen Jones, and that it was made by Davie to be transferable to another by Jones, and was actually transferred by Jones to Sloan & Son, and that a mortgage was executed by Jones upon this 1–5 of the water power tract that he held for Davie to J. B. E. Sloan & Son, then it follows that the Circuit Judge committed no error, and this ground of appeal must be dismissed. And as Henrietta C. Davie derives her interest through William R. Davie, of course, all equities between Allen Jones or Jones & Robertson as against him will bind her also.

13. The recent act of the legislature of this State allows a Circuit Judge under certain circumstances to avoid the use of commissioners in partition, and himself to order lands subject to partition to be sold for that purpose. Besides all this, a Court of Equity has always been invested with a large discretion in such matters, and from the testimony on this subject, the conclusion of the Circuit Judge was a very proper one. The sale, as ordered by the Circuit Judge, seems to have carefully guarded the rights of all the parties to the action.

14. This finding or conclusion of the Circuit Judge cannot be urged for any very practical benefit, as the lands will be sold at an early day, and the need, therefore, of a receiver will soon terminate. We think the Circuit Judge acted very wisely and properly in this matter, and we therefore overrule this ground of appeal.

15. The conclusion of the Circuit Judge in relation to the rights of Edward McCrady, jr., under his purchase of the bond and mortgage of William R. Davie to Allen J. Davie seems to us very proper. Gen. McCrady never intended,

we think from the testimony here, any advantage to himself from this purchase; he was evidently and confessedly seeking to prevent a hardship, as he conceived it to be, to his client, Henrietta C. Davie. But no matter how knightly his motive might be, under the testimony in this case, he had no right to buy up this alleged bond and mortgage of William R. Davie to Allen J. Davie. He was estopped by his relation as counsel to Allen Jones and Thomas C. Robertson in connection with this very bond and mortgage, from taking the position he did. It might be, as a fact and as a conclusion of law, that the very moment William R. Davie became the administrator of the estate of Allen J. Davie, deceased, this bond and mortgage was paid, except so far as the Rock Hill Manufacturing and Industrial Association was concerned, and, if so, nothing could pass by the sale to Edward McCrady. But as to this last suggestion this court expresses no opinion. Certainly if he had no right to maintain the action he commenced, and the same was ordered to be discontinued or dismissed, it being in equity, the Circuit Judge had the right to require him to pay the costs of that action. This appeal is dismissed.

16. We see no error here.

17. We think the conclusions of Judge Kershaw in relation to the mortgages of Pelzer, Rodgers and Company and J. B. E. Sloan and Company are the legitimate results of his previous findings of fact that we have already sustained. We see no cause to change our minds so soon on these points, and therefore dismiss this appeal.

18. We cannot disturb the conclusion of the Circuit Judge in reference to Mrs. Henrietta C. Davie's rights in the 1–5 of the Landsford property originally owned by Allen J. Davie. We are satisfied therewith as being the logical result of his decisions already considered. This appeal is dismissed.

19. The Circuit Judge could not have found that William R. Davie had no legal or equitable interest in the property, in view of the testimony here adduced. This ground of appeal is dismissed.

20. We have already virtually decided the point involved in this ground of appeal, and it is dismissed.

13—36

21. This court has long since decided that the provision of our law requiring the decisions of Circuit Judges to be filed within sixty days after the term at which the trial was had, does not invalidate them when rendered aftewards. While the cause of the delay in such decision being filed is regretted, it is with profound gratitude that this court realizes that the cause of the delay has been removed, and the Circuit Judge, whose illness alone prevented an earlier discharge of his duty in the premises, has been restored to health, to the great joy of this people and for their good.

22. This ground of appeal calls in question the decree of the Circuit Judge, where it passed upon the rights and equities as between William R. Davie on the one side, and Allen Jones or Jones & Robertson on the other. This is the recognized duty of the trial judge, whenever the pleadings or testimony in a cause make it proper that it should be done. Here both the pleadings and the testimony abundantly justified such course. If a reference of any issues between these co defendants was necessary to the complete determination of their respective rights or equities, either in obtaining new testimony or taking an account, it was entirely proper to do so. Law is pre-eminently a practical science as well as art, and where it becomes necessary in order to preserve rights or redress wrongs, to pursue remedies supplied by law, it must be done, and the Circuit Judge must in the first instance set such remedies in motion. We are obliged to sustain the Circuit Judge in these particulars. The ground of appeal is dismissed.

23. Mrs. Mary F. McCrady presents an appeal from the decree of Judge Kershaw as follows : "Because his honor made all 'the costs of these proceedings and the expenses of sale' a charge upon the proceeds of sale generally of the Landsford estate, including the so-called water power tract, directing that the clerk do *first* pay from such proceeds of sale all such costs and expenses." We are inclined to think Mrs. McCrady is entitled to this relief from the decree of Judge Kershaw. We do not abate our language previously used herein, attributing a certain responsibility upon her for the litigation that has taken place herein between rival defendants or sets of

defendants; still it is but just to her to state that such issues were bound to be made in the cause, and that such issues in no wise affected her interest in the Landsford property. She refused to join in any scheme for the enlargement of her share in the Landsford property, or that portion known as the water power tract, by obtaining a share of the A. J. Davie or W. R. Davie's shares in either or both. Therefore, in no sense did she contribute to the complications of the parties thereafter by reason of what was done by the other parties to such schemes or plans. This being so, we do not think she ought to be chargeable with any other costs than her share of the costs that accrued up to the arbitration in 1887, and in addition thereto, to her proportion of the costs of sale, including surveys and such other costs of sale. This being the view of this court, it will be necessary to so modify this particular part of the Circuit Judge's decree as to carry into effect this one conclusion.

FOURTH. *The appeal from Judge Norton's decree.* The following are the grounds of appeal: 1. Because his honor confirmed the report of John C. McFadden, Esq., clerk of said court, made and filed in the above stated cases 1st March, 1890, and overruled the exceptions of these defendants thereto in the following particulars: a. For that said referee reported that William R. Davie is indebted to Jones & Robertson in any amount for guano delivered to him through McFadden & Davidson in the year 1885; and further, for that he, the said referee, reported the sum of three hundred and nine 24–100 dollars as the amount of such indebtedness, the amount of such indebtedness (if any) not exceeding $268.40. b. For that said referee reported that the amount due by William R. Davie to Jones & Robertson for balance due on rent of 1886, was $545.50, with interest from January 1st, 1887, making a total due of $666.52. 2. Because his honor, after ordering the said clerk to inquire and report the real amount due upon the $1,666.06 note of William R. Davie to Jones & Robertson, went on to decree that "this inquiry shall be without prejudice to the said J. B. E. Sloan & Son to proceed to enter their judgment herein, just as if the clerk's report were confirmed in every respect as to whom it is confirmed."

1. The exceptions a and b under this the first ground of ap-

peal, present no exception to the well considered rule of practice in this court, that when there is a concurrence in the finding of facts by a Circuit Judge and referee, very strong reasons will be required to overturn such finding here; such strong reasons must either be that there was no evidence in the court below to sustain the same, or that it was manifestly against the weight of the testimony. No reason is given us why such conclusion was erroneous. Certainly the exceptions do not so indicate. And after an examination of the testimony ourselves, we fail to find any strong reasons, as above defined, to cause us to come to a different conclusion from that reached in the court below. The ground of appeal is dismissed.

2. Now the gist of the complaint embodied in this second ground of appeal is this: that the note for $1,666.06, given by W. R. Davie to Jones & Robertson, and which was so given to enable such firm to use it as a collateral to raise money by a loan from others, and was so used with Sloan & Son, might be inquired into as between W. R. Davie and Jones & Robertson to ascertain if the amount so set up in the note was actually due, yet that as to Davie and Sloan & Son such inquiry could not be had. We think the Circuit Judge was clearly right here, and, as it will be seen hereafter, no possible damage could have accrued to Col. Davie from this decree. This ground of appeal is dismissed.

FIFTH. *The appeal from Judge Wallace's decree.* 1. Because his honor, Judge Wallace, confirmed in all respects the report of John C. McFadden, Esq., special referee, filed 18th June, 1890, and overruled the exceptions thereto in the following particulars: "For that said referee allowed the items of the accounts generally between William R. Davie and Jones & Robertson without the proper evidence thereof, to wit, the books of original entry of Jones & Robertson, &c., and the drafts or orders of William R. Davie on Jones & Robertson, the referee having allowed the same upon the ledgers of Jones & Robertson alone as secondary evidence." We have examined the report and the testimony upon which Judge Wallace bases this decree. It seems that the books of original entry and the order or drafts of William R. Davie, complained of, had been destroyed

by fire.   Of course, secondary evidence became not only legal but absolutely necessary to establish such items of indebtedness. This was done.   This was held proper by the Circuit Judge.   By this means this appellant got credit for several hundred dollars upon demands previously reported against him.   Not only so, in reducing his note, the Circuit Judge ruled that he became actor. At all events, after a careful examination of these matters, we are satisfied that no wrong has been done.   There being a concurrence in findings of fact between the Circuit Judge and referee, we shall not interfere, as no good reason has been shown therefor.   The appeal here is dismissed.

It is the judgment of this court that all the intermediate decrees herein and the final decree are affirmed, except that the intermediate decree of Judge Kershaw shall be modified as to the costs, so far as Mrs. Mary F. McCrady is concerned, as required by the within opinion of this court.